UNITED STATES *v.* SCHMIDT (No. 2569) [1]

CONSTRUCTION, PARAGRAPH 1414, TARIFF ACT OF 1922—LEGISLATIVE SANC-
     TION—DOLLS AND DOLL HEADS.

By reenacting the provision for dolls and doll heads in successive tariff acts
up to and including its appearance in paragraph 1414, Tariff Act of 1922,
Congress is presumed to have sanctioned the judicial construction put upon
it, which was that it included articles intended and used for the amusement of
children and excluded articles intended and used for other purposes, such as
ornamental or practical. The addition, in the act of 1922, of new provisions
for articles which are not toys only adds such to the paragraph and works no
change in the established construction of the rest of it. Doll heads, designed
and used for making pincushions, boudoir lamps, telephone covers, pillows,
cushions, and other ornamental and useful things, shown to be commercially
unfit for making dolls, are not within the paragraph, but are manufactures
of plaster of Paris under paragraph 1440.

## United States Court of Customs Appeals, November 21, 1925

APPEAL from Board of United States General Appraisers, G. A. 8943 (T. D. 40709)

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Fred J. Carter,* special
attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument Oct. 9, 1925, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
               Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Two parcel-post entries of merchandise made at the port of New
York are involved in the case at bar. In one entry the goods are
described as "dolls," while in the other, they are designated as
"dolls' heads." They were classified for duty by the collector under
the specific provisions for dolls and doll heads in paragraph 1414 of
the Tariff Act of 1922 at 70 per centum ad valorem. Various claims
were made by the importer, namely, under paragraph 1440, as manu-
factures wholly or in chief value of plaster of Paris; under 1438 as
manufactures wholly or in chief value of wax; under paragraph 214
as manufactures of earthy substances; under paragraph 399 as
unenumerated manufactured articles; or under paragraph 1119 as
manufactures not specially provided for. On appeal to the Board
of General Appraisers, the merchandise was held to be dutiable, as
claimed in the protest, under paragraph 1440. From that judgment
the Government appeals.

Said paragraphs 1414 and 1440 are, so far as they are material
here, as follows:

1414. Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials
composed, air rifles, toy balloons, toy books without reading matter other than

---

[1] T. D. 41200.

letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning, and Christmas-tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

1440. Manufactures of * * * plaster of Paris * * * or of which these substances or any of them is the component material of chief value, not specially provided for; * * *.

A sample of the merchandise is before us. It consists of a head and bust about 5 inches in length, representing an adult woman. The features of the head are decorated with some artistic skill, and a wig of white imitation hair covers the top and back of the head. Extending out of the bottom of the bust, one end of the same being securely fastened therein, are three rather heavy wires, each about 8 inches in length. One wire, of lesser gauge and about 4 inches in length, extends in a like manner from each side of the bust. An analysis made of a sample of the goods by the Government analyst shows the merchandise to be in chief value of plaster of Paris.

On the hearing before the court below the record in protest 979397 was incorporated as a part of the record herein, the goods in both cases being admittedly the same. From the testimony appearing in the transcript of record it appears the importer testified in his own behalf. On the part of the Government three witnesses were called, namely, Alfred Munzer, a manufacturer of dolls and doll heads; Arthur Loebel, a traveling salesman of dolls and novelties; and C. W. Bunn, examiner of merchandise at the port of New York. From the testimony of these witnesses it plainly appears that the merchandise in question is bought and sold in the trade generally as "dolls' heads." As to the use and adaptability for use of these dolls' heads, there is some conflict in the testimony.

The importer testified in substance that he used these dolls' heads in making up pincushions, boudoir lamps, telephone covers, pillows, and cushions, which he sold to department stores; he further stated that these heads could not be made into dolls by attaching bodies to them. On the other hand, the witness, Munzer, a doll maker since October, 1918, testified that he had on one occasion in 1922 made up a small number of dolls for the toy trade, using heads similar to the sample before us, but that these dolls were not salable because of their high price. This witness also stated the merchandise in question was used in the trade for pincushions, telephone covers, and many other purposes. The witness, Loebel, testified that he had seen the merchandise in question made up into dolls, with cotton-stuffed bodies and limbs, in imitation of French dolls, but that because of the high cost that use was discontinued; that they were chiefly used for machines, boudoir lamps, pincushions, and like pur-

poses, by adults. The witness Bunn stated that he had on many occasions passed fully made-up imported dolls with heads similar to the exhibit in this case. The reasonable deduction to be drawn from this testimony is that the use of these dolls' heads is chiefly for ornamentation and decoration, and that any use that may have been made of them as dolls, or toys, for the amusement of children is incidental and rare.

We may dismiss from consideration all of the claims made by the protestant as not supported by any facts appearing in the record, except the claim made under paragraph 1440.

The question then arises upon the facts hereinbefore recited, whether the doll heads should be classified under said paragraph 1414, or under some other paragraph of said act. The *eo nomine* designation "doll heads" is more specific than the designation "manufactures * * * of plaster of Paris," and, therefore, the goods should be classified under said paragraph 1414, unless some other rule obtains which requires their classification under said paragraph 1440.

In the tariff act of October 1, 1890, appeared the following paragraph:

436. Dolls, doll heads, toy marbles of whatever material composed, and all other toys not composed of rubber, china, porcelain, parian, bisque, earthen or stoneware, and not specially provided for in this act, thirty-five per centum ad valorem

That language in substantially the same form was carried in all succeeding tariff acts up to and including the tariff act of October 3, 1913, wherein it appears as paragraph 342. In the Tariff Act of 1922, practically the same language was carried in paragraph 1414, with some additions thereto, namely, "air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads." There was, therefore, no change of language in the Tariff Act of 1922 in respect to dolls or doll heads from that appearing in the law since the approval of the act of October 1, 1890. The various acts not heretofore cited and the paragraphs referred to are paragraph 321, act of August 27, 1894; paragraph 418, act of July 24, 1897; paragraph 431, act of August 5, 1909.

The Board of General Appraisers on various occasions have been called upon to construe these succeeding antecedent provisions of paragraph 1414. In T. D. 13805, G. A. 1999, certain bisque figures of babies in various postures, made so that they might be placed lying or standing upon a flat surface, were held under the tariff act of October 1, 1890, to be not intended for the amusement of children,

but to be commonly used for household ornaments and bric-a-brac, and hence not classifiable under paragraph 436, the doll and toy paragraph of that act.

T. D. 26012, 9 Treas. Dec. 132, was a proceeding before the board relative to the classification of certain small bisque or chinaware figures, in the form of children, all having a flat base and being hollow inside. The samples indicated they were designed for use as ornaments or retainers for bon bons or liquids. They were held to be classifiable not as dolls or toys, under paragraph 418 of the act of July 24, 1897, but as manufactures of china or bisque.

In T. D. 27206, china or bisque figures, representing infants in a standing position, were found to be not suitable for ornaments, but designed exclusively for playthings for children, and accordingly classifiable as dolls under paragraph 418 of said act of July 24, 1897.

*United States* v. *Butler Bros.*, 180 Fed. 1005, was a review by the Circuit Court of the Northern District of Illinois of a decision of the Board of General Appraisers classifying certain "position babies" and "bath babies" as dolls under paragraph 418 of the tariff act of July 24, 1897. The Board of General Appraisers so classified the same apparently because of the fact that they were used as toys by children. The decision was affirmed.

In T. D. 37606, 34 Treas. Dec. 341, small dressed dolls were claimed to be dolls, and classifiable under paragraph 342 of the tariff act of October 3, 1913, the doll and toy paragraph. The board found these dolls were "intended and designed for the amusement of children only, and by their very nature and character are reasonably fitted for no other purpose," and hence the protest was sustained.

T. D. 39172, 41 Treas. Dec. 466, concerned certain tea cozies or dolls, having decorated earthenware or china heads and with a wire base, hollow. The figures were covered with silk, in representation of the forms of women. It was found these articles were not adapted for use as playthings for children but for a practical and ornamental use. They were held not to be dolls but manufactures in chief value of silk.

Throughout all these decisions of the Board of General Appraisers the controlling issue was whether the article in question was intended and used for the amusement of children or whether it was intended and used for ornamental, practical, or some other purposes. In the first instance it was properly classified under the doll or toy paragraph; in the second, under some other appropriate paragraph, usually according to its component material of chief value.

This was the well-established rule for the classification of such articles when the Tariff Act of 1922 was prepared and enacted. That portion of paragraph 1414 referring to dolls and doll heads, being a reenactment of the preceding statute, paragraph 342 of the tariff act

of October 3, 1913, without change, it must be assumed that the Congress knew and assented to the rule of construction that had been thus established. *United States* v. *Beierle,* 1 Ct. Cust. Appls. 457; *United States* v. *Von Bremen et al.,* 12 Ct. Cust. Appls. 407.

But it is argued that the inclusion of the new language in paragraph 1414 makes necessary a different construction—that certain articles being therein enumerated which are not toys, it results that only such of the articles named in the paragraph which are preceded by the word "toy," such as "toy marbles," "toy books," etc., should be held to specify toys. We do not so construe it. Our idea is expressed in the opinion of this court, rendered in *United States* v. *Strauss,* 13 Ct. Cust. Appls. 167, T. D. 41025, where we said:

> The new provisions in paragraph 1414 of the act of 1922 are not involved in the consideration at hand, and, as far as the merchandise in controversy is concerned, when Congress used the words "Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books * * * and all other toys, and parts of toys, not composed * * * and not specially provided for, 70 per centum ad valorem," in paragraph 1414, it had the same merchandise in mind that it had in mind when it enacted paragraph 418 of the act of 1897. In the whole paragraph it intended to include, and did include, certain articles which it specifically named for the first time, most of which, if not all of which, had been, by the ruling of the Board of General Appraisers or this court, denied classification under the paragraph.

The merchandise in the case at bar, being designed and chiefly used for practical and utilitarian purposes, and not for the amusement of children, was properly held by the court below to be classifiable as manufactures in chief value of plaster of Paris under paragraph 1440.

*Affirmed.*