(C. D. 144)

S. E. Laszlo *v.* United States

United States Customs Court, First Division

(Decided April 13, 1939)

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before McClelland, Sullivan, and Brown, Judges

Sullivan, Judge: This protest is against the decision of the collector of customs at the port of New York in assessing with duty certain so-called "Airguns" at 70 per centum ad valorem under paragraph 1513, Tariff Act of 1930, as toys or articles chiefly used for the amusement of children.

It is claimed that they are not toys, and that they are dutiable "at only 45% under Par. 397 as manufactures of metal."

By amendment to the protest a claim has been added "that the merchandise is properly dutiable at only 27½% ad valorem under the provisions of paragraph 372 as machines or parts, n. s. p. f."

The only witness was Stephen E. Laszlo, who testified on behalf of the plaintiff that he is the importer named in this protest, and that he handles "air rifles and other sporting goods"; that he is familiar with the merchandise, which is described on the invoice as Diana air guns.

A sample of this merchandise, model 35, was received in evidence as Exhibit 1, being of .22 caliber, and weighing 6¾ pounds.

The witness testified that the same model on the invoice, but of caliber .177, was identical with Exhibit 1, but of different bore.

A sample of the same gun, model 25, was received in evidence as Exhibit 2. This was caliber .22. The same item, but caliber .177,

was stated by the witness to be the same as Exhibit 2, except a difference in the caliber.

Exhibit 3 represents the same gun, model 22, and Exhibit 4, model 16.

The witness testified that Exhibits 1 to 4 "operate in the same fashion," and described their operation as follows:

Exhibit 1 operates in the fashions that the bore, when you pull down the bore you compress a spring. This spring is here [indicating]. That is an additional exhibit, a different sample, which I brought separately.

The sample last referred to by the witness was received in evidence as Illustrative Exhibit 1–A.

The witness continued with his description of the gun's operation as follows:

On the top of the spring there is a plunger, and it is depressed when the bore is pulled down. * * * the plunger goes from the mouth of the breech backwards, and by moving backwards it compresses the spring.

A sample of the plunger is in evidence as Illustrative Exhibit A–2.

As to the plunger's operation the witness testified:

When the plunger reaches a certain position it is hooked into a trigger. This is the trigger. (Illustrative Exhibit A–3.) * * * This is the so-called cocked position, which means that the exhibit has stored up energy. The next step is to load the gun * * * with air rifle pellets.

Q. A lead pellet?—A. Yes, sir.

Q. That is put into the breech?—A. Yes, sir. * * * while the gun is in the broken position. Then the gun is ready to shoot. You close it and you put it up, and you press the trigger (illustrating). It would expel the pellet.

The witness testified that the use of this merchandise was "for target shooting"; that these guns are extremely accurate; that they are adjustable for distance and for elevation, model 36 being "good for 50 yards."

The witness then testified as to their penetration power, stating that the two largest models have sufficient power to kill small animals, and that Exhibits 1 and 2 can be used to hunt small game.

Plaintiff's counsel then sought to show the penetration power of Exhibit 1, and the following colloquy ensued between counsel and the court:

Mr. RODE. I want to show that it is not an article ordinarily used for the amusement of children.

Mr. VITALE. I think the Government will concede that.

Presiding Judge McCLELLAND. I think the exhibit itself is absolute proof of that.

Mr. RODE. I will withdraw the question, on the Government's concession that it is not suitable for the use of children.

Mr. VITALE. (Government counsel) That it is not chiefly used for the amusement of children.

\*        \*        \*        \*        \*        \*        \*

Presiding Judge McClelland. Does the Government seriously contend that these are toys, chiefly used by children?

Mr. Vitale. *Absolutely not.* There is a notation that they are toys, chiefly for the amusement of children. Of course, as I look at the advisory classification they are classified under the toy paragraph, as to the *eo nomine* provision for air rifles. It doesn't say "toy rifles." It says "air rifles." * * * (Counsel reads from the collector's return attached to protest.) Apparently from that the collector classified them as toys chiefly used for the amusement of children. We will have to stand by that classification unless I can later on prove otherwise to the court, or abandon the classification later and show that even though they may not be toys they would still be dutiable under that paragraph.

In view of the Government's concession that these articles are not toys plaintiff's counsel stated he would not question the witness further "about the persons who used this article."

Counsel for plaintiff refused to concede that these articles are air rifles, but he introduced in evidence a catalog describing the various items in which plaintiff deals. As to this catalog the witness stated "Exhibit 1, model 35, shown on page 9; model 25, Exhibit 2, is shown on page 7; model 16, Exhibit 4, is on page 5." This catalog is marked "Exhibit B." These guns are illustrated on the pages mentioned, and are termed therein "Junior Marksman Air Rifle," "Diana Air Rifle," and "Diana Air Rifle Model 35 with Pat. Hair Trigger," respectively. We can therefore conclude that the articles at bar are air rifles.

As to the component material of chief value in these air rifles the witness testified he had visited the manufacturing plant abroad; that they are composed of wood, leather, and metal, and that the cost of the metal is in excess of the costs of the leather and wood. On cross-examination he testified he derived this knowledge from the manufacturer and not from his own knowledge.

He further testified on cross-examination that they are sold as air rifles and purchased as air rifles.

On redirect examination he was asked by his counsel to examine Exhibit 4, and state "if there is any rifling in that barrel." He answered, "Absolutely not." Exhibit 4 is the smallest and cheapest of these air rifles. He did not testify as to whether or not there was rifling in the barrels of the other exhibits.

The Government did not introduce any evidence.

The pertinent portions of paragraph 1513 are as follows:

Par. 1513. * * * all other dolls, parts of dolls (including clothing), doll heads, toy marbles, toy games, toy containers, toy favors, toy souvenirs, of whatever materials composed, air rifles, toy balloons, toy books * * * bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children. * * *

It will be noted that with the exception of "dolls," "doll heads," "*air rifles*," and "garlands, festooning and Christmas tree decorations," all the articles *eo nomine* mentioned in the foregoing quotation from paragraph 1513, are prefaced by the word "toy." Congress has not specifically indicated that it was intended to confine the provision for air rifles therein to toy air rifles. The same is true as to the dolls, doll heads, garlands, festooning and Christmas-tree decorations therein. So that there is provision for seven articles specifically designated as *toys* in the paragraph, and for four without the preface "toys," if we consider the "garlands, festooning and Christmas tree decorations" as one designation. It would seem however, at first blush, from the designation "all *other* toys" (italics ours) as a catch-all provision at the end of the paragraph that Congress intended this entire paragraph to provide for toys or articles chiefly used for the amusement of children.

There is no indication in the official papers accompanying the protest that the collector classified these articles as "air rifles." On the contrary, his communication, dated October 14, 1937, addressed to the Assistant Attorney General, and attached to the protest, indicates he classified them "as articles chiefly used for the amusement of children—toys" under paragraph 1513. The examiner's notation on the invoice merely indicates the rate of duty as being 70 per centum ad valorem under paragraph 1513. We can therefore assume that the collector classified them as toys, and not as "air rifles." It is evident from the record that these articles are not toys, and that they should not have been classified as such. The collector's classification is therefore erroneous, and there is no presumption of correctness attaching thereto in this case. It is evident, however, that these articles are air rifles, and being such the question arises, should they be classified under the *eo nomine* provision for air rifles in paragraph 1513, in view of the fact that it was apparently the intention of Congress to provide for all toys therein, "not specially provided for" elsewhere in the tariff act? Incidentally, paragraph 1513 is the only provision of the tariff act providing for "air rifles" *eo nomine.*

There is a provision for shotguns and *rifles* and parts thereof in paragraph 365; but the protest does not contain a claim that these air rifles are dutiable under that paragraph.

Plaintiff's counsel contends in his brief—

It is submitted, therefore, that when Congress inserted in the toy paragraph the provision for air rifles, such action was intended to cover those air rifles which were toys and which were used for the amusement of children.

In the *Frank F. Dow & Co.* case, Abstract 23953, 63 Treas. Dec. 1494, we had before us certain so-called "Christmas Bells and Silver Bells," classified as toys or articles chiefly used for the amusement of

children under paragraph 1513, and claimed dutiable at lower rates. We said:

> The wording of the paragraph makes it clear that Congress intended this paragraph *to cover toys, and toys only*, and that Christmas tree decorations and other articles eo nomine mentioned therein were considered by it to be toys. Now, in the case at bar, these Christmas tree decorations in the shape of bells are evidently not the kind of Christmas tree decorations eo nomine mentioned in the paragraph, because they are not made "wholly or in chief value of tinsel wire, lame or lahn, bullions or metal thread," but their classification under paragraph 1513 carried with it the presumption that they are toys or articles "chiefly used for the amusement of children." There is not a word of evidence in this record to overcome that presumption.

We therefore overruled the protest.

In the *S. S. Kresge* case, Abstract 33467, 69 Treas. Dec. 1192, we had similar merchandise before us, also classified as toys and claimed dutiable at lower rates according to the component material of chief value. We followed the *Dow* case, *supra*, and said, "Neither the evidence nor the samples indicate that this merchandise is not *chiefly* used for the amusement of children."

That case went to the Court of Customs and Patent Appeals, *S. S. Kresge Co.* v. *United States*, 25 C. C. P. A. 1, T. D. 48975, and was reversed and remanded, the court saying:

> It seems quite evident that it was the intent of the collector to classify these articles for duty, as decorations made in chief value of bullions, under the provision of the statute, paragraph 1513, "garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads."
>
> It furthermore appears that there was no intent by the collector to classify them as toys.

It would appear from the foregoing that the appellate court was of opinion that not everything *eo nomine* mentioned in the toy paragraph is a toy, and that the *eo nomine* provision therein for "garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn," even though contained in the toy paragraph, did not necessarily mean that such garlands, etc., must be articles chiefly used for the amusement of children, and that, therefore, although named in the toy paragraph, they were not required to be toys to be classifiable thereunder.

In *Schmidt* v. *United States*, T. D. 40709, 47 Treas. Dec. 233, under the Tariff Act of 1922, we held that the *eo nomine* provision for dolls in the toy paragraph of that act (1414) was confined to dolls used by children as toys, and not to—

> a miniature bust of a woman composed of plaster of Paris and having a wig of artificial hair, used in making telephone covers, electric light ornaments, pin cushions, and on rare occasions to make dolls used by children in play.

We said:

\* \* \* While the merchandise in question is called "doll heads," yet the paragraph in question, being the toy paragraph, is evidently intended to cover merchandise used for the amusement of children, and not articles, such as these, used by ladies of mature age for the decoration of their boudoirs, dressers, and bureaus.

\* \* \* \* \* \* \*

We need not cite all of the numerous cases that have arisen before the board and the courts under previous tariff acts on the toy question. *Dolls are only classified as toys* when they meet the requirement of being exclusively used for the amusement of children, and not suitable for any other use. None of the elements of a toy enters into the merchandise in question. It is not used exclusively for the amusement of children. It has other and distinct uses. [Italics ours.]

Our decision and judgment was affirmed by the appellate court in *United States* v. *Schmidt*, 13 Ct. Cust. Appls. 252, T. D. 41200. The court said (p. 254):

In the tariff act of October 1, 1890, appeared the following paragraph:

436. Dolls, doll heads, toy marbles of whatever material composed, and all other toys not composed of rubber, china, porcelain, parian, bisque, earthen or stoneware, and not specially provided for in this act, thirty-five per centum ad valorem.

That language in substantially the same form was carried in all succeeding tariff acts up to and including the tariff act of October 3, 1913, wherein it appears as paragraph 342. In the Tariff Act of 1922, practically the same language was carried in paragraph 1414, with some additions thereto, namely, "air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations, made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads." \* \* \*

At pages 255 and 256 of its opinion the appellate court said:

\* \* \* That portion of paragraph 1414 referring to dolls and doll heads, being a reenactment of the preceding statute, paragraph 342 of the tariff act of October 3, 1913, without change, it must be assumed that the Congress knew and assented to the rule of construction that had been thus established. [Citing cases.]

In other words, for the reason that prior to the enactment of the Tariff Act of 1922 there had been numerous decisions holding certain dolls having a useful purpose not dutiable under the *eo nomine* provision for dolls in the toy paragraph, Congress was presumed to know of such decisions when it enacted the toy paragraph of 1922 providing for dolls, etc., and to have acquiesced in such holdings in its reenactment of the provisions for dolls and doll heads in that act; and for such reason the prior holdings as to dolls and doll heads having a useful purpose not being classifiable under the toy paragraph should be followed.

This, of course, would not be true as to air rifles, which were provided for *eo nomine* for the first time in the Tariff Act of 1922, and as to which, so far as the court can ascertain, there has been no customs litigation until the present suit. Congress, therefore, could not have provided for air rifles in the act of 1922 and the present act with the

idea that due to prior holdings, air rifles not toys would be excluded therefrom. It seems to us therefore that the exclusion of dolls from the provision for dolls in the toy paragraph, by reason of the fact that the excluded dolls were not used to amuse children, should not be considered a precedent for excluding air rifles from the toy paragraph. The exclusion of such dolls was due to their exclusion from toy paragraphs of previous acts by reason of many decisions, and the acquiescence in such decisions by Congress in its reenactment of the doll provisions in the Tariff Acts of 1922 and 1930 without substantial change.

It seems to the court that if Congress had intended to cover only *toy* air rifles in paragraph 1513, it would have so stated.

If there is such a thing as a *toy* air rifle it would be an anomaly. An air rifle, no matter how small, is a dangerous article, and the average parent would not permit a child under the age of puberty to play therewith. In fact, the court is informed that air rifles are considered so dangerous in the hands of children that their use is not permitted in the city of New York. It would seem, therefore, that there is not any such thing as a *toy* air rifle, which is perhaps the reason Congress did not preface the words "air rifle" with the word "toy" when it enacted the Tariff Acts of 1922 and 1930. If Congress had so stated in the toy paragraph, importers of air rifles classified as toys would, in litigation, in all probability have endeavored to render such provision nugatory, by proving they were not chiefly used for amusement by children under the age of puberty. *United States* v. *Halle*, 20 C. C. P. A. 281, 283, T. D. 46077.

We have read plaintiff's brief. In our opinion the doctrine of *noscitur a sociis* should not be applied to these air rifles by reason of *S. S. Kresge* v. *United States*, *supra*, indicating the opinion of the appellate court that not everything *eo nomine* mentioned in the toy paragraph is a toy.

The *Chelsea Bag & Burlap* case, 11 Ct. Cust. Appls. 255, T. D. 39079, cited by plaintiff, was a decision based on long-continued practice. This case being, so far as the court knows, the first litigation on the classification of air rifles does not involve long-continued practice. Therefore, that case is not an authority as to the case at bar.

Plaintiff's counsel refers to legislative history, in order to sustain his contention that Congress intended to include in the term "air rifles" only such as are chiefly used for the amusement of children. Legislative history should only be resorted to in cases of ambiguity. We think the term "air rifles" in paragraph 1513 is clear and unambiguous, especially as it is not preceded by the word "toy" as is the case with most of the articles covered thereby, with the exceptions noted. *United States* v. *E. De Grandmont, Inc.*, 21 C. C. P. A. 17, T. D. 46345.

At the close of his brief plaintiff's counsel asserts his contention that the air rifles in question are machines and dutiable as such under para-

graph 372. He cites numerous cases in support of his contention. The *eo nomine* provision "air rifles" in paragraph 1513 stands by itself, and specifically provides for such weapons. If we held them classifiable as machines, in view of this *eo nomine* provision all weapons expelling missiles by mechanical power might be so classifiable. The word "machine" does not embrace "air rifles," inasmuch as they are *eo nomine* mentioned in paragraph 1513, and this is true as to all the exhibits in the case at bar. Admittedly, a mere inspection thereof and their weight and length indicate they could not be used by children for amusement. In addition, as we have stated, use by a child under the age of adolescence would be dangerous, and to permit such use would not be in accordance with humanitarian thoughts and ideas. The *eo nomine* provision "air rifles" in paragraph 1513 covers the merchandise at bar. They are air rifles for the reason their projectiles are propelled by compressed air, rather than by gunpowder. They are accurate guns for target shooting and for hunting small game, in the hands, not of children, but of persons having discretion and judgment.

We therefore hold that the *eo nomine* provision "air rifles" covers the merchandise here involved, and that the duty of 70 per centum ad valorem under paragraph 1513 is applicable thereto, not because it is a toy, but by reason of the fact that such *eo nomine* designation removes it from classification under any other paragraph.

This merchandise is not a rifle, as that term is generally understood, and therefore would not fall under the provision for rifles in paragraph 365, although such claim is not made.

We are clearly of opinion that the collector's assessment of duty at 70 per centum ad valorem under paragraph 1513 was proper, although we do not agree with his classification of this merchandise as a toy.

The protest is overruled. Judgment for defendant.