(C. D. 963)

Louis Wolf & Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided November 9, 1945)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel)· for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Robert C. O'Grady,* special attorney),
·for the defendant.
*Lamb & Lerch* (*Kenneth G. Osborn* of counsel) *amici curiae.*

Before Oliver and Cole, Judges

Oliver, Presiding Judge: The merchandise involved in this suit (represented by exhibits 1, 2, and 3) is described on the invoice as "World Fair Dolls." Two of these articles are hollow celluloid figures. Exhibit 1 is approximately 4½ inches in height; exhibit 2 about 6 inches. Exhibit 3 is a floppy cotton article about 12 inches in length, with a celluloid head. All these figures are colored and are manufactured so as to simulate a military uniform, with the World's Fair insignia of the "Perisphere" and "Trylon" on the hat.

The dolls were assessed under the respective provisions therefor in paragraph 1513 of the Tariff Act of 1930, reading:

Par. 1513. * * * dolls and toys, composed wholly or in chief value of any product provided for in paragraph 31, * * * not having any ·movable member or part, 1 cent each and 50 per centum ad valorem, * * * all other dolls, * * * of whatever materials composed, * * * 70 per centum ad valorem.

Counsel stipulated that the cotton figure represented by exhibit 3 (and also by illustrative exhibit A) is in chief value of cotton velveteens or cotton velvets (R. 121).

Plaintiff claims that the celluloid figures are properly dutiable at 60 per centum ad valorem under paragraph 31 as articles composed in chief value of one of the cellulose compounds provided for therein, and that the cotton velvet articles are dutiable as manufactures of cotton at 40 per centum under paragraph 923, or as articles in chief

value of cotton velveteens or velvets at 62½ per centum under paragraph 909. Plaintiff further contends that these figures are not the kind of dolls contemplated by paragraph 1513, in that they are not used by children as toys at play and that they do not fall within the dictionary definitions of "doll."

Defendant, however, in support of the collector's classification, contends that the imported articles are dolls; that they are bought, sold, and invoiced as dolls and are included in, and covered by, the doll provisions of paragraph 1513, whether or not they are toys. The Government further claims that the dictionary definitions do not go far enough and that in the trade and commerce of the United States a doll may be something more than a puppet for the use of children at play.

The brief of *amici curiae* outlines the development of legislation and judicial interpretation prior to the act of 1930, and agrees with the contention of the Government that these articles have been properly classified under paragraph 1513 as dolls.

Plaintiff's four witnesses, all but one of whom were or formerly had been connected with the plaintiff corporation, testified that while these figures were bought, invoiced, and sold as dolls, and they personally referred to them in their testimony as dolls, they were not dolls since they were not sold in toy stores or in toy departments and had no play value for children. Three of the witnesses testified that the celluloid figures (exhibits 1 and 2) and the cotton figure (exhibit 3) were used by concessionaires at fairs and carnivals where they were given away or sold to adults. This use was supported by the testimony of plaintiff's witness Kaplan, a carnival concessionaire. These witnesses agreed with the dictionary definitions of a doll as being used by children as a plaything and were of opinion that the articles here before us did not come within these definitions which are given below:

A toy puppet representing a person, and used as a plaything by children, especially by girls. [Funk & Wagnalls New Standard Dictionary of English Language, 1939.]

A puppet representing a child, usually a little girl (but also sometimes a boy or a man, as a soldier, etc.), used as a toy by children, especially by girls. [Century Dictionary and Cyclopedia.]

A child's puppet; esp., a toy baby for a child; any similar figure for play or ornament. [Webster's New International Dictionary, 2d Ed., 1936.]

Defendant's six witnesses, all duly qualified, five of whom were experienced manufacturers of dolls, toys, and novelties, were in complete agreement that the imported articles were dolls. They testified that the dictionary definitions above referred to were not broad enough to cover all dolls and that this term was not confined to toys or playthings for children but included dolls used by adults, such as boudoir dolls, and also dolls for display and commercial and other uses. They also agreed that the use to which it is put is not con-

trolling in determining whether or not an article is a doll. In disagreeing with the dictionary definitions, one of these witnesses gave his definition of a doll as follows (R. 114):

A doll is really a commercial reproduction of either an artist's conception of a figure, or the artist's conception of a child, or the artist's conception of what might be on the printed page, or a reproduction of some character either from fiction or from fact, or, at the present time the trend is towards military dolls, soldier dolls, WACS and WAVES, in which the artist, or designer, reproduces in miniature, as compared to the size of the original model, a soldier, or sailor; or sometimes dolls are the result of fads. We had a Teddy Bear fad in the country and right after that they took and put the head from the little Billiken on it and called it the Billiken doll, which was the forerunner of our domestic production. From then on no matter what the material that it is made out of, its general form, which is grotesque and out of proportion, as long as it has a human characteristic it is a doll. In the eyes of the trade and those seeking to purchase that type of merchandise—they come to the doll trade to buy it.

It is evident from this record that there are many kinds of dolls, probably the most popular and numerous being those designed especially as playthings for children. Other dolls are designed for purposes of ornamentation, such as boudoir dolls used by adults, and others such as those now before us being used as souvenirs or prizes at carnivals or fairs. There are also dolls for display and advertising purposes which are not used by children and were never designed for such use.

The tariff history on the subject of dolls and many of the decisions up to and including those under the Tariff Act of 1922 were reviewed by our appellate court in *United States* v. *Schmidt* (13 Ct. Cust. Appls. 252, T. D. 41200), wherein articles made of plaster of paris representing the head and bust of a woman, for use in connection with telephone covers and utilitarian purposes and not for the amusement of children, were held to be dutiable as manufactures of plaster of paris under paragraph 1440, Tariff Act of 1922, and not as doll heads under paragraph 1414 of that act. In that case, decided in 1925, the court said (p. 255):

Throughout all these decisions of the Board of General Appraisers the controlling issue was whether the article in question was intended and used for the amusement of children or whether it was intended and used for ornamental, practical, or some other purposes. In the first instance it was properly classified under the doll or toy paragraph; in the second, under some other appropriate paragraph, usually according to its component material of chief value.

This was the well-established rule for the classification of such articles when the Tariff Act of 1922 was prepared and enacted. That portion of paragraph 1414 referring to dolls and doll heads, being a reenactment of the preceding statute, paragraph 342 of the tariff act of October 3, 1913, without change, it must be assumed that the Congress knew and assented to the rule of construction that had been thus established. *United States* v. *Beierle*, 1 Ct. Cust. Appls. 457; *United States* v. *Von Bremen et al.*, 12 Ct. Cust. Appls. 407.

In that case it was argued that the inclusion of the new language in paragraph 1414 of the act of 1922 made necessary a different con-

struction—that certain articles being therein enumerated which are not toys, it followed that only such of the articles named in the paragraph which are preceded by the word "toy," such as "toy marbles," "toy books," etc., should be held to be dutiable as toys. The court refused to adopt such construction, citing and quoting from *United States* v. *Strauss* (13 Ct. Cust. Appls. 167, T. D. 41025) to the effect that the new provisions in paragraph 1414 of the Tariff Act of 1922 were not involved and that as far as the merchandise under consideration was concerned when Congress enacted paragraph 1414 of the act of 1922, it had the same merchandise in mind that it had when it enacted paragraph 418 of the act of 1897.

Thereafter, in *Laszlo* v. *United States* (27 C. C. P. A. 152, C. A. D. 76), the court held that the term "air rifles" in paragraph 1513 of the Tariff Act of 1930 was not intended to be restricted to such air rifles as were toys but included all air rifles of every description. Referring to *United States* v. *Schmidt, supra,* and other previous decisions of the courts, wherein it had been held that only dolls which were in fact toys were included in the so-called toy paragraph, our appellate court stated (p. 156):

These cases require no discussion by us for the reason that paragraph 1513 of the Tariff Act of 1930 differs greatly from previous provisions in other tariff acts with relation to dolls, and it would seem that under said paragraph *all dolls, whether toys or not, are included therein.* However, that question is not before us, and it is not necessary to determine it here. [Italics supplied.]

In *Kresge* v. *United States* (25 C. C. P. A. 1, T. D. 48975), it was held that the provision in the Tariff Act of 1930 for "Christmas tree decorations" embraced articles distinct from toys, and, though provided for in paragraph 1513, they are not required to be toys for classification thereunder.

In *Pressner* v. *United States* (7 Cust. Ct. 106, C. D. 546), cited by both the plaintiff and defendant, miniature figures resembling football players were held not to be dutiable as "dolls" under the provisions of paragraph 1513, Tariff Act of 1930. That case was decided upon the common meaning, and the court held that the imported merchandise was outside the definition of the term "dolls" as given by the lexicographers. No attempt was made to establish commercial meaning. Although all of the four witnesses for the defendant therein testified that the exhibits representing the imported merchandise there before the court were dolls, none of them, as the court pointed out, "had purchased, sold, used, or seen the imported merchandise." After commenting on *Laszlo* v. *United States, supra,* the court (Tilson, J.) stated:

\* \* \* Dolls are unquestionably included in and covered by said paragraph 1513, *whether toys or not,* but the above decision is no evidence of whether a miniature figure is or is not a doll. [Italics supplied.]

In the Tariff Act of 1930, the wording of the so-called "toy" paragraph (1513) was substantially changed from the corresponding paragraph of the act of 1922 (1414), particularly in relation to dolls, by adding new provisions covering dolls and doll clothing, composed of "laces, fabrics, embroideries, or other materials or articles provided for in paragraph 1529 (a)"; and dolls "composed * * * of any product provided for in paragraph 31"; also, by incorporating in the law the definition of the term "toy" as used in that paragraph. Such a substantial change in language imports a change of meaning (*United States* v. *American Brown Boveri Electric Corp.*, 17 C. C. P. A. 329, T. D. 43776). It seems clear that Congress, by these new provisions relating to dolls and by defining the term "toy" as used in the paragraph, indicated an intent that the provision for dolls should be treated as an independent provision separate and distinct from the provision for toys and not to be limited to such dolls as were toys but should include all dolls. This view was clearly that of our appellate court, in *Laszlo* v. *United States, supra,* and of our own court in *Pressner* v. *United States, supra.*

The sole question before us is whether or not these imported figures (exhibits 1, 2, and 3) are dolls. If they are, it is immaterial whether or not they are chiefly used for the amusement of children.

The record in the present case establishes by a fair preponderance of the evidence that the articles under consideration are dolls and were so known in the trade; that the term "doll" is not confined to articles used as playthings for children but includes those for ornamental purposes, for advertising, and for other uses; and that the term "doll" in the trade and commerce of the United States had a definite, uniform, and general meaning which included such dolls as those now before us.

Furthermore, we are of opinion that the common meaning of that term is sufficiently comprehensive to include all dolls, whether or not they are toys. In support of this view, it will be noted that the secondary definition of "doll" as given in Webster's New International Dictionary, 2d Edition, 1936, reads:

* * * any similar figure for play or *ornament* [Italics supplied].

This broader view is further borne out by a comprehensive article on the subject of dolls appearing in the Encyclopaedia Britannica, 14th Edition, wherein the history, development and use of various types of dolls are set forth in detail, indicating besides their use as playthings for children, wide use in religious rites and other ceremonies in many parts of the world from earliest times to the present day. The article also contains the following comment (p. 510):

* * * During the World War elaborately costumed dolls of the latter type [dolls intended to illustrate seasonal fashions], made very often by women artists

as a means of livelihood in the period of distress, and bought by adults for ornamental purposes, if not as playthings, were produced in large numbers and acquired great popularity as gifts and keepsakes among the well-to-do.

We do not make any all-embracing finding as to what is a doll or to hold that all small figures are dolls, but we do find that the articles here before us are dolls.

Having so found, we hold the merchandise involved to be properly dutiable under the applicable *eo nomine* provisions for dolls in paragraph 1513, as classified by the collector.

The protest is overruled and the classification of the collector is affirmed.