(C. D. 1211)

## M. PRESSNER & Co. v. UNITED STATES

United States Customs Court, First Division

(Decided February 9, 1950)

*Siegel, Mandell & Davidson (Sidney Mandell* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General *(Joseph E. Weil,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge: The merchandise involved in the suit at bar consists of certain celluloid figures, approximately 6½ inches in height, imported from Japan and described on the invoice as "Foot Ball Players" (item No. 5849), entry 823642. They were assessed with duty under paragraph 1513 of the Tariff Act of 1930 at 1 cent each

and 50 per centum ad valorem as "dolls." The importer claims the merchandise to be properly dutiable under paragraph 31 (b) (2) of the same act as manufactures of cellulose.

The pertinent provisions of the involved paragraphs are as follows:

PAR. 1513. * * * dolls and toys, composed wholly or in chief value of any product provided for in paragraph 31, * * * not having any movable member or part, 1 cent each and 50 per centum ad valorem * * *.

PAR. 31. (b) All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers), and all compounds, combinations, or mixtures of which any such compound is the component material of chief value:

\*         \*         \*         \*         \*         \*         \*

(2) made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for, 60 per centum ad valorem.

No testimony was introduced by either party but there was incorporated herein the record in the case of *M. Pressner & Co.* v. *United States*, 7 Cust. Ct. 106, C. D. 546 (R. 2).

In the incorporated case, decided October 27, 1941, the merchandise consisted of celluloid miniature football players, the same merchandise which is before the court in the present case. The assessment and claim therein were likewise the same as here. No attempt was there made by the defendant to establish commercial designation for the merchandise and that case was decided on the basis of the common meaning of the word "dolls." The testimony of the witnesses for the plaintiff therein was directed to showing how the imported merchandise was used and that it was not used for the amusement of children. The testimony of the witnesses for the defendant was directed to a showing that the imported merchandise was "dolls," regardless of the use to which it was put. Three of the plaintiff's four witnesses, who were peddlers, hawkers, or vendors at fairs, carnivals, and football games, testified that they sold this merchandise to adults attending football games. The articles were used as badges and pinned to the coat of the buyer. Although all of the four witnesses for the defendant testified that the exhibits representing the articles there before the court were dolls, none of them had purchased, sold, or previously seen the imported merchandise.

Counsel for the defendant in the incorporated case relied on the following quotation from the case of *Laszlo* v. *United States*, 27 C. C. P. A. 152, C. A. D. 76, as supporting the contention that the merchandise was dutiable under paragraph 1513:

These cases require no discussion by us for the reason that paragraph 1513 of the Tariff Act of 1930 differs greatly from previous provisions in other tariff acts with relation to dolls, and it would seem that under said paragraph all dolls, whether toys or not, are included therein. However, that question is not before us, and it is not necessary to determine it here.

With reference to the above, this court in the incorporated case stated:

Although the above statement is clearly *obiter dicta* in the case in which it was used, * * *, it appears to be a sound statement in a case where applicable. Dolls are unquestionably included in and covered by said paragraph 1513, whether toys or not, but the above decision is no evidence of whether a miniature figure is or is not a doll. In other words, said decision does not attempt to hold that all miniature figures are dolls.

Upon an examination of the entire record, including an inspection of the samples in evidence, the court then concluded:

In this case we have looked to the testimony of the witnesses as to the common meaning of the term "dolls" in connection with the merchandise itself and in connection with the definitions of lexicographers and technical authorities and after thoroughly considering the same we are satisfied that the miniature forms or figures of football players in this case are not dolls within the meaning of that term as used in said paragraph 1513. We accordingly hold that the said merchandise is not dutiable under said paragraph, as assessed by the collector.

The Government in its brief cites *Louis Wolf & Co., Inc.* v. *United States*, 15 Cust. Ct. 156, C. D. 963, decided subsequent to the decision in the *Pressner* case, *supra*. There, the merchandise, described on the invoice as "World Fair Dolls," consisted in part of colored celluloid figures, approximately 4½ inches and 6 inches in height, chiefly used at fairs and carnivals, and not shown to be chiefly used as playthings for children. It was classified under paragraph 1513 of the Tariff Act of 1930 as dolls and claimed dutiable under paragraph 31 of the same act as articles composed in chief value of one of the cellulose compounds provided for therein. The articles were bought, invoiced, and sold as dolls. In holding the articles there involved to be dutiable under the *eo nomine* provisions for dolls in paragraph 1513, Tariff Act of 1930, this court stated, in part, at page 158:

It is evident * * * that there are many kinds of dolls, probably the most popular and numerous being those designed especially as playthings for children. Other dolls are designed for purposes of ornamentation, * * * and others * * * being used as souvenirs or prizes at carnivals or fairs. There are also other dolls for display and advertising purposes which are not used by children and were never designed for such use.

In commenting on the secondary definition of "doll," as given in Webster's New International Dictionary, 2d Edition 1936, reading:

* * * any similar figure for play or ornament * * *

we said (p. 160):

* * * This broader view is further borne out by a comprehensive article on the subject of dolls appearing in the Encyclopaedia Britannica, 14th Edition, * * *, indicating besides their use as playthings for children, wide use in religious rites and other ceremonies in many parts of the world from earliest times to the present day. The article also contains the following comment (p. 510):

* * * During the World War elaborately costumed dolls of the latter type [dolls intended to illustrate seasonal fashions] * * *, and bought by adults

for ornamental purposes, if not as playthings, were produced in large numbers and acquired great popularity as gifts and keepsakes among the well-to-do.

And in conclusion (p. 161):

We do not make any all-embracing finding as to what is a doll or to hold that all small figures are dolls, but we do find that the articles here before us are dolls.

While the court in the *Wolf* case, *supra*, held that the involved articles were dolls, that case is distinguishable from the case at bar and from the incorporated *Pressner* case. In the *Wolf* case, *supra*, we held that the common meaning of the term "doll" was sufficiently comprehensive to include all dolls, whether or not they were toys, and it was established in that record that the articles under consideration were dolls and were so known in the trade.

There is nothing in the record in the incorporated case or in the case at bar to establish a commercial designation of the celluloid figures here in question as "dolls." The case, therefore, must be decided on the common meaning of the word "dolls." It has been established by the record herein that the involved figures were used by adults in attendance at football games. The figures are not dolls as that term is used in paragraph 1513. The Government seemingly relies on the secondary definition of "doll," as given in Webster's New International Dictionary, 2d Edition, 1936, namely, "any similar figure for play or ornament." While the articles at bar are miniature figures representing a person, they are not by reason of that fact alone dolls. Each case must stand on its own record. The celluloid figures here are worn on the person by adults while attending football games. They are worn as badges or insignia to indicate allegiance to some particular college or school team and it does not appear that they ornament the person of the wearer. They are not, therefore, similar figures for play or ornament and are not embraced within the secondary definition of the term "dolls." As stated by this court in the incorporated *Pressner* case:

* * * It is scarcely to be supposed that men and women over 18 years of age would be interested in purchasing and wearing a doll on the lapel of their coats while attending football games.

We are in accord with the view therein expressed and believe it to be equally applicable in the present case.

On the record before us and upon an examination of the samples in the incorporated case, which are potent witnesses, we are satisfied that these celluloid football figures are not "dolls" within the common meaning of the term. We are of opinion that they are not dutiable as assessed but are properly dutiable under paragraph 31 (b) (2) of the Tariff Act of 1930, at the rate of 60 per centum ad valorem as manufactures of cellulose, as claimed. The protest is sustained and judgment will issue accordingly.