No. 57251.—Barum Co., Inc v. United States, protest 174697–K (New York).

OLIVER, Chief Judge: This case relates to two items, described on the invoice as "ART. 744—Elephant" and "ART. 745—Monkey," which were classified as toys, in chief value of rubber, and assessed with duty at the rate of 50 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 51898, which supplemented T. D. 51802. Plaintiff claims that the the articles are properly classifiable under the provision for dolls, of whatever material composed, in paragraph 1513, as modified by T. D. 50797, and dutiable at the rate of 35 per centum ad valorem.

Samples of the articles in question are before us. Each is a hollow, soft, rubber figure, approximately 7½ inches high. Both have a metal whistle firmly attached in the back to produce sound when the article is squeezed. One of the items (exhibit 1) has the face of a monkey. The head is made to appear that the monkey is wearing a black hat. All of the part below the head has been painted so as to depict the monkey dressed in clothing and playing a musical instrument. The other article under consideration (exhibit 2) has the head of an elephant, shown to be wearing a red hat. Below the head, the figure is painted to simulate clothing, consisting of a green and yellow jacket, red trousers, and black shoes.

Five witnesses offered testimony. Two appeared on behalf of plaintiff and three for the defendant.

Joseph R. Odell, plaintiff's first witness, was formerly employed as import manager of the toy section of the plaintiff corporation, a general importer of toys, leather goods, and shoes. His employment began in 1948, when he arrived in this country from England. He was connected with plaintiff for a period of only 2 years, until 1950. His sales experience has been confined to New York and Chicago. Negotiations with buyers were made with the use of samples, and in executing the contracts, the merchandise was sold as "rubber dolls, 7½ inch," with an identifying number.

A photograph (plaintiff's illustrative exhibit 3) shows 13 figures including the 2 involved herein. Under each is a number that refers to a particular style. They represent merchandise imported by plaintiff. All were classified as dolls, except the two in question. The two items under consideration are distinguishable by the face of an animal on each. All of the remaining items depict human characters (sailors, a clown, children, women). The witness, referring to the entire display, stated he regarded all of them as dolls.

The witness agreed with the definition of "doll," taken from Webster's New Collegiate Dictionary, 1945, and read to him as follows: "A child's puppet; a toy baby for a child." He was also confronted with the definition of "doll," taken from Funk and Wagnalls New Standard Dictionary, 1942, and read to him as follows: "A toy puppet representing a person, and used as a plaything by children, especially by girls." Asked whether he agreed with that definition, he stated, "No, I wouldn't quite agree with it" (R. 40). His testimony explaining why he disagreed is as follows (R. 40, 41):

X Q. What part of the definition do you take issue with?—A. Is that your own definition, or did you quote this definition?

X Q. Would that make a difference in your answer?—A. Insofar that I would say a doll is a puppet which can resemble either a human being as well as in part an animal, and would be used exclusively by children for play, but I would not classify it to any particular sex.

X Q. You wouldn't say representing a person? That part of the definition you take issue with?—A. A person or human being. In saying a person, you are narrowing the definition. You have to give a broader definition by saying instead of person, human beings.

: X Q. . Would that include animals?—A. Or alternatively, partly resembling animals.

' The witness testified that, within his experience in the toy trade, the word "doll" was not limited to figures that had only human characteristics when used by children as playthings. The articles in question are dolls because each is "a combination of human and animal" (R. 52), and "if you go right up to the neck it is a human body with arms, and from then on, the head is an animal." Referring to the use by children of the present merchandise, the witness stated that they "usually just squeeze them, chew them; all sorts of things" (R. 27). At first, on direct examination, the witness stated that the items under consideration are character dolls. Later, and on cross-examination, he changed the identification, eliminating the descriptive word "character," and testified that the merchandise would be included within the general category "dolls." He stated further that these articles would be referred to as rubber dolls and squeeze dolls.

Elias Kittay, plaintiff's second witness, is a wholesale distributor of toys, novelties, and dolls, who has been engaged in the business for 25 years throughout the United States. He identified the items displayed on the top line of the photograph (plaintiff's illustrative exhibit 3) as articles that he purchased from plaintiff as "an assortment of rubber dolls, imported rubber dolls." Referring to the two items in question, he testified that he sold them in 1950 and 1951 as rubber dolls, and that such articles are used by boys and girls between the ages of 6 months and 6 years. The pertinent part of his testimony on the common meaning of "doll" is as follows:

X Q. Do you agree with this definition of a doll: "A toy puppet representing a person and used as a plaything by children, especially by girls"?—A. I partially agree with it.

X Q. What part don't you agree with?—A. It hasn't gone far enough.

X Q. What particular part don't you agree with?—A. There is no limitation on who should play with a toy or a doll, a boy or girl. A puppet is sometimes described as other than a doll because it suggests some internal movement or external movement to make the parts move by strings or by the action of fingers or hands. That is a description of a puppet. Your general classification may be one-tenth right, I would say.

\* \* \* \* \* \* \*

JUDGE MOLLISON: I read you this definition from Webster's New Collegiate Dictionary, of a puppet: "1. A small image in human form; doll." Do you agree with that definition?

THE WITNESS: I believe a puppet could be a doll.

JUDGE MOLLISON: Do you agree with that definition?

THE WITNESS: Partially.

JUDGE MOLLISON: What part do you not agree with?

THE WITNESS: A human form would not necessarily compare with a doll.

JUDGE MOLLISON: The second part of the definition says it is a doll. Do you agree with the first part, "A small image in human form", or do you agree with the second part, "a doll", definition of a puppet?

THE WITNESS: Overall I would agree with almost its entirety.

JUDGE MOLLISON: From the same source I read you the definition of a doll: "A child's puppet; a toy baby for a child." Do you agree with that definition?

THE WITNESS: No, I do not, because there are dolls, and forms and figures, boudoir dolls, and mechanical dolls, and they all serve different purposes. I believe as far as the dictionary goes, it is true, but they don't go into a thorough discussion of dolls.

His understanding of the term "doll," as it is recognized in the wholesale toy trade, is corroborative of the testimony along the same line offered by the previous witness.

· During the course of the cross-examination of both of plaintiff's witnesses, Government counsel introduced several illustrative exhibits (illustrative exhibits A to H, inclusive). · In connection therewith, it should be noted that plaintiff's witnesses were not in agreement in identifying two of those exhibits. The witness, · Odell, described the bunny (illustrative exhibit B) and the monkey (illustrative exhibit C) as novelties and not dolls. The witness, Kittay, identified those two articles as dolls.

Defendant's first witness, Samuel Drelich, has been a sales representative for doll manufacturers since 1933. Prior thereto, and for a period of 24 years, the witness was a buyer of toys, including dolls, both domestic and foreign, for Gimbel Bros. in New York. He first became familiar with the present merchandise in 1922. He characterized the articles as rubber toys, or rubber animals, or rubber squeeze toys. To support his description of them as rubber toys, the witness said (R. 84): "When we first brought them over—these were made in all red rubber originally, and they also had the same thing in them, called whistlers. You bought them with rubber toys with and without whistlers. That is the way they were billed to us, and came through the Customhouse, and we sold them." The items under consideration do not have the characteristics of dolls. "They were never designated that way [as dolls] when they were sold to us, or did I buy them that way, or were they ever billed to us from importers as rubber dolls" (R. 84). "They were always put in a particular classification in the store under infants' toys, and were designated only as rubber toys, and sold as such. Never were they sold as a doll" (R. 85). Distinguishing between a doll and a toy, the witness testified as follows (R. 86):

JUDGE MOLLISON: What is there about the characteristics of a doll as distinguished from the characteristics of a toy?

THE WITNESS: A doll is something which you generally hand to a child, or girl mostly, to play with, and there were certain small types of dolls that didn't have any moving arms or legs, but 99 per cent of them did.

JUDGE MOLLISON: In order to be a doll, would a figure have to be in the human form, or the image of a human form? ·

THE WITNESS: Yes.

JUDGE MOLLISON: Might it be in the form of an animal?

THE WITNESS: No, sir.

The witness was asked whether he agreed with this definition of "doll": "A child's puppet; a toy baby for a child"; and he answered, "I wouldn't call a puppet a doll." He was then asked whether he agreed with the definition of "puppet," as follows: "A small image in the human form; doll." His answer was as follows: "No. There are dolls made in puppet form, and so are animals made in puppet form, but we never designate a puppet as a doll. You usually look at a puppet as something you put on your hand and something that goes on strings."

When he was asked what he bought as a doll, the witness stated "In the United States I bought a stuffed body, with composition arms and legs, with composition head, with moving eyes. They were designated as dolls" (R. 96).

Ralph W. Stevens, defendant's second witness, is the supervisor of sales for Seiberling Latex Products Co., manufacturer of molded goods, including rubber balls, toys, bathing caps, and household gloves. The company does not produce rubber dolls, but is the manufacturer of the squeeze toys represented by some of the illustrative exhibits before us, i. e., pig (illustrative exhibit F), bear (illustrative exhibit G), and dog (illustrative exhibit H), which he identified as being similar to the present merchandise, as they are molded toys fitted with a noisemaker that emit sound when the article is squeezed. The witness saw articles like those in question in the place of business of plaintiff's witness, Kittay, where they were

included among "an assortment in a box" similar to the display shown on the photograph (illustrative exhibit 3), but he was unable to say how those articles were sold.

James R. Stritch, the third witness to appear on behalf·of defendant, has been employed since 1946 as sales manager of Molded Latex Products, whose business includes the manufacture of rubber articles like the present merchandise, which he described as "molded rubber toys which have a whistle in them. Their size varies. They are made in basically the same manner, features and what not are decorated·on them with paint, and that is about it." He characterized them as "caricatures of a human form adopted to an animal." The witness further testified that the toy trade and the doll trade are separate channels for the distribution of two different classes of merchandise. He stated that a doll is generally a representation of a human baby or adult that is dressed or can be dressed and which has distinct moving parts. "In most cases the head will turn and the arms will move, and in 99 per cent of the cases it will be of a human face." The articles in question are not dolls; "These are rubber toys or squeeze toys" (R. 112).

Plaintiff concedes that the articles in question are toys. The admission is stated in counsel's brief as follows: "Since there is no question herein that the involved figures are toys exclusively used by children, the sole remaining question for the Court is whether or not they are the kind of toys which fall within the term "dolls" in said Par. 1513."

· Defendant regards the foregoing. concession as a virtual disposition of the present case.· Government counsel, in his brief, argues the point as follows:

* * * Since plaintiff has conceded that the articles herein are both toys and dolls, we respectfully submit that under the language of paragraph 1559 of the Tariff Act, to wit:

If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

the classification of the articles, as toys, should be sustained.

Defendant's argument overlooks the judicial interpretation, holding that the *eo nomine* provision for "dolls" in paragraph 1513 is generic in scope, as it embraces all sorts of dolls including those that are toys. *S. E. Laszlo* v. *United States*, 27 C. C. P. A. (Customs) 152, C. A. D. 76; *Louis Wolf & Co., Inc.* v. *United States*, 15 Cust. Ct. 156, C. D. 963; *The American Import Company* v. *United States*, 22 Cust. Ct. 51, C. D. 1158. The provision for dolls "should be treated as an independent provision separate and distinct from the provision for toys," the *Louis Wolf & Co., Inc.,* case, *supra.*

There is no question of commercial designation in this case. Thus, the testimony offered by the respective parties must be regarded as related to the common meaning. Under such circumstances, the testimony is advisory only and not binding upon the court. *United States* v. *R. E. Macksoud, Central Maderia Corp.*, 27 C. C. P. A. (Customs) 218, C. A. D. 87.

. Counsel for plaintiff, arguing on the basis of common meaning, reasons in his brief as follows:

For example, the first definition of "doll" in Webster's New Collegiate Dictionary, 1945, is (R. 38): "A child's puppet; a toy baby for a child;" and in Webster's Collegiate Dictionary, 5th Ed., a puppet is defined as (R. 39-40): "A small image in human form; doll. A similar figure, often with jointed limbs, moved by hand or strings or wires; as in a mock drama; a marionette." Thus a doll can be either (1) a child's small image in human form, or (2) a similar figure. It would seem that the definition of "puppet" in referring to an image "in human form" was attempting to give a general idea of the usual shape of a puppet and not that it must have entirely human features. Any small image *representing the human shape* would fall within this definition, unless the term "human form" is construed to mean "entirely human features." It is submitted that the said term

was not used with the latter meaning but merely to explain as simply as possible the shape of an image which is a puppet and, when so construed, figures like Ex. 1 and 2 herein, which are small images in human form, would fall within the definition of a doll even though they do not have entirely human features. This construction does not open the door to any claim that figures like Ill. Ex. F, G and H are dolls, *for they clearly are not in the human shape and, therefore, are not puppets.* [Italics quoted.]

The answer to plaintiff's contention is found from an examination of the samples of the present merchandise (exhibits 1 and 2). Samples are potent witnesses. *United States* v. *May Department Stores Co.*, 16 Ct. Cust . Appls. 353, T. D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029; *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995. To say that the articles under consideration are "in human form," as contended by plaintiff, requires an unreasonable stretch of the imagination. An appropriate description is that each of the items is a grotesque rubber figure, especially designed for the amusement of children. The metal whistle is an outstanding characteristic of each article. It enhances the value of the article as a toy and is not something to be associated with a doll. The appearance of the articles lends support to defendant's description of them as caricatures.

On the record before us, we find from a preponderance in weight of the evidence that the items in question are toys, as assessed, and not dolls, as claimed. The protest is overruled and judgment will be rendered accordingly.