BEFORE THE FIRST DIVISION, APRIL 12, 1957

**No. 60634.**—M. Adler's Son, Inc., et al. *v.* United States, protests 251737–K, etc. (New York).

OLIVER, Chief Judge: The protests, enumerated in schedule "A," hereto attached and made a part hereof, relate to certain articles, described on the invoices either as "Celluloid Baby 2¼" with Chenille stem" (manufacturer's item number T–8294) or "Celluloid Baby with Milk Bottle & Diaper on stem, movable hands" (manufacturer's item number T–8382), that were classified under paragraph 1513 of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

PAR. 1513. Dolls * * * composed wholly or in chief value of any product provided for in paragraph 31, having any movable member or part, 1 cent each and 60 per centum ad valorem; not having any movable member or part, 1 cent each and 50 per centum ad valorem; * * *.

The articles identified by manufacturer's number T–8294, *supra,* were assessed at the rate of 50 per centum ad valorem, and those represented by manufacturer's number T–8382, *supra,* were assessed at the rate of 60 per centum ad valorem.

Plaintiffs claim that the merchandise being equipped with a chenille stem (item T–8294, *supra*) or with chenille stem, milk bottle, and diaper (item T–8382, *supra*) is something more than dolls, and that, therefore, these articles are properly classifiable under the provision for articles, not specially provided for, wholly or in chief value of cellulose compounds, other than cellulose acetate, in paragraph 31 (b) (2) of the Tariff Act of 1930, as modified by T. D. 52373, supplemented by T. D. 52462, carrying a dutiable rate of 30 per centum ad valorem.

At the trial, counsel for the respective parties submitted these protests on an oral stipulation to the effect that the merchandise in question is the same in all material respects as the article which was the subject of our decision in *W. C. Sullivan & Co.* v. *United States,* 37 Cust. Ct. 385, Abstract 60266, the record in which case was incorporated herein by consent.

The incorporated case involved an issue identical with that presented herein. The merchandise involved therein (plaintiff's collective exhibit 1) was described as—

* * * a flesh-colored, hollow, celluloid doll, approximately 2⅜ inches in length and 2 inches in body circumference. A thin strip of chenille, approximately 5½ inches in length, is glued to the back of the doll.

There was an agreement between the parties that the article was "composed in chief value of a cellulose compound other than acetate."

In this case, one of the items in question is identical with the article that was before us in the incorporated case. The other item under consideration (plaintiffs' exhibit 2) is the same, except that, in addition to the chenille stem, the doll appears to be holding a milk bottle and is fitted with a diaper.

Analysis of the testimony adduced in the incorporated case is set forth in our decision (Abstract 60266, *supra*) as follows:

One witness testified. He was the import manager of Oscar Leistner, Inc., importer of the merchandise under consideration, and whose business includes the importation of "artificial decorations and novelties." The witness, who does "the buying and the selling and other work connected with it" for his employer, testified that the article in question is sold under the name of "celluloid baby dolls on chenille stem"; that it is always sold in its condition as imported, as represented by the sample (collective exhibit 1, *supra*); that the celluloid doll, *per se*, is never sold alone; and that the chenille stem is secured to the back of the doll in a way that, if the stem were removed, it would mutilate the doll to such extent that its usefulness would be destroyed. The witness testified further that he sells the article in question "mostly to florist supply houses" and that it is used by florists in making up table decorations for "baby showers."

In the incorporated case, we stated that "The chenille strip, as it is permanently attached to the celluloid figure, makes the article materially different from a doll" and, therefore, held that the article was "something more than a doll." Accordingly, plaintiff's claim for classification under paragraph 31 (b) (2), as modified, *supra*, was sustained.

However, since our decision in the incorporated case, the Court of Customs and Patent Appeals, in a somewhat analogous case, held to be classifiable as a doll, a miniature plastic figure with a metal shaft affixed thereto that dedicated the article to exclusive use as a dancing doll with a music box. *United States* v. *Cody Manufacturing Co., Inc.*, and *Rohner Gehrig & Co., Inc.*, 44 C. C. P. A. (Customs), 67 C. A. D. 639 (decided February 21, 1957). In reaching its conclusion in that case, the appellate court quoted with approval from our decision in *Cody Manufacturing Co., Inc.*, and *Rohner Gehrig & Co., Inc.* v. *United States*, 33 Cust. Ct. 377, Abstract 58428, where we said:

Counsel for plaintiffs argues, in his brief, that the merchandise in question does not respond to the tariff classification of "dolls" in that "it could not be used by children as a toy because of the spindle or spike which extends down from the body of the figure," and also because "the very presence of this spike or spindle makes the Exhibit 1 something more than a doll even if the remaining part of the exhibit were to fall within the tariff definition of doll."

The contentions are without merit. First of all, the tariff provision for dolls, unlike the one for toys, is not limited to merchandise chiefly used for the amusement of children. As stated by the Court of Customs and Patent Appeals in the case of *S. E. Laszlo* v. *United States*, 27 C. C. P. A. 152 (Customs), C. A. D. 76, "paragraph 1513 of the Tariff Act of 1930 differs greatly from previous provisions in other tariff acts with relation to dolls, and it would seem that under said paragraph all dolls, whether toys or not, are included therein." In our decision in the case of *Barum Co., Inc.* v. *United States*, 30 Cust. Ct. 414, Abstract 57251, we held that "the *eo nomine* provision for 'dolls' in paragraph 1513 is generic in scope, as it embraces all sorts of dolls including those that are toys." The substance of dictionary definitions, in the light of the foregoing judicial pronouncements, is that a "doll" is a puppet, representing a person, for use either in play or as an ornament. Webster's New International Dictionary and Funk & Wagnalls New Standard Dictionary.

The miniature plastic figure in question is a doll, within the cited legal and dictionary authorities. In appearance and in use, it is representative of a ballet dancer. The metal shaft, affixed thereto, is an appurtenance that dedicates the article to its exclusive use as a particular kind of a doll, i. e., a dancing doll, with a music box.

The statutory construction, as expressed in the foregoing quotation, has equal application herein, and the adoption thereof by the appellate court in its recent decision of February 21, 1957, in the *Cody Manufacturing Co., Inc.*, and *Rohner Gehrig & Co., Inc.*, case, *supra*, makes it determinative of the present issue. Consistent therewith, it can be said that, in this case, the chenille stem or strip that is used in one of the items under consideration (item T–8294, *supra*) and the chenille strip with milk bottle and diaper that is used with the other item (item T–8382, *supra*) dedicate the articles in question to be dolls of a particular kind or distinctive character. The conclusion is a reversal of the decision in the *W. C. Sullivan & Co.* case, *supra*.

For all of the reasons hereinabove set forth, we hold the articles in question, as hereinabove identified, to be classifiable under the provision for "dolls" in paragraph 1513, *supra*, and dutiable at the particular rate applicable to each individual item, as assessed by the collector. The protests are overruled and judgment will be rendered accordingly.