**AMERICAN CUSTOMS BROKERAGE CO., Palmar Import Co., Inc.**

**v.**

**UNITED STATES.**

**Protest 63/21162–21130; C.D. 3246.**

United States Customs Court,
First Division.

Jan. 9, 1968.

Glad & Tuttle, San Francisco, Cal., (Edward N. Glad and Robert Glenn White, San Francisco, Cal., of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Charles P. Deem, New York City, and Thomas Fernandes, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, JJ.

MALETZ, Judge:

The problem in the present case is to determine the proper classification of merchandise described on the invoice as "Papier Mache Hawaii Girl 5." The articles were classified by the collector as dolls, composed in part of the fabrics enumerated in paragraph 1529(a) of the Tariff Act of 1930, and duty was assessed at 38 per centum ad valorem under paragraph 1513 of that act, as modified by T.D. 54108.[1] Plaintiffs claim that the articles are not "dolls" within the meaning of paragraph 1513; that they are in chief value of papier mache; and that they are, therefore, properly classifiable as manufactures of papier mache, dutiable at 9½ per centum ad valorem under paragraph 1403, Tariff Act of 1930, as modified by T.D. 55615 and T. D. 55649, which covers "Manufactures of papier-mâché, not specially provided for (not including masks)."

A sample article in evidence is a figure of a Hawaiian hula girl, some 5 inches in height, which is mounted by a spring on a magnetic metal holding base. It is designed for use on the front dash or rear seat deck of an automobile as a decorative item. The figure pivots on the axis and sways with the motion of

---

1. Paragraph 1513 of the act as thus modified imposes a 38 per centum ad valorem duty on "Dolls and doll clothing, composed in any part, however small, of any of the laces, fabrics, embroideries, or other materials or articles provided for in paragraph 1529(a) * * *."

the automobile in a manner resembling a hula dance. Its genesis was a figure of a Hawaiian girl made out of earthenware which was primarily used for home decoration, but was also used as an automobile accessory by persons who glued it to the rear deck of their automobiles. Though this earlier figure was without motion, its skirt blew around in the breeze as the car moved. Later a spring mounting was designed so that the entire body of the figure would sway with the motion of the automobile, and papier mache was substituted for the earlier earthenware figure so that the figure would not be damaged by the motion of the automobile. Finally, magnets were added to the base of the mount to hold the figure fast to the metallic body of the automobile.

The item is sold primarily to the automotive jobbing trade, which in turn resells it to automotive supply and discount houses; it is not sold to toy departments or toy jobbers. While available to toy dealers, it is clearly alien to their line of interest. The ultimate users of the item use it in their automobiles, where it can be seen from the outside; the record shows it is not generally used as a plaything by children.

One automotive supply chain lists in its catalog and orders articles similar to the one in issue as "hula dolls" under a general classification of "ornaments." Its member stores describe the item on their price tags as "Hula Doll." These member stores are not toy stores and do not sell dolls *per se.*

Against this background, we hold for the reasons set out below that the articles in question are dolls within the meaning of paragraph 1513 of the Tariff Act of 1930, as modified, and that the protest must, therefore, be overruled.

■ At the outset, it is apparent from the record that the articles are not toys, i. e., used chiefly for the amusement of children. It is likewise clear that paragraph 1414 of the Tariff Act of 1922—the predecessor of paragraph 1513—was consistently construed as applying to dolls only if they were toys.[2] E. g., United States v. Schmidt, 13 CCPA 252, T.D. 41200 (1925), and cases cited; Strauss-Eckhardt Co. (Inc.) v. United States, 56 Treas.Dec. 428, T.D. 43664 (1929). In this context, plaintiffs' main position is that Congress intended in enacting paragraph 1513 of the Tariff Act of 1930 to continue this long-standing judicial construction of paragraph 1414 and thus to limit paragraph 1513 only to such dolls as are toys. The difficulty with this argument is that the language of paragraph 1513 of the Tariff Act of 1930 differed substantially from paragraph 1414.[3]

2. Paragraph 1414 of the Tariff Act of 1922 covered: "Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for."

3. Paragraph 1513 as originally enacted, read as follows:
Dolls and doll clothing, composed in any part, however small, of any of the laces, fabrics, embroideries, or other materials or articles provided for in paragraph 1529(a), 90 per centum ad valorem; dolls and toys, composed wholly or in chief value of any product provided for in paragraph 31, having any movable member or part, 1 cent each and 60 per centum ad valorem; not having any movable member or part, 1 cent each and 50 per centum ad valorem; parts of dolls or toys, composed wholly or in chief value of any product provided for in paragraph 31, 1 cent each and 50 per centum ad valorem; all other dolls, parts of dolls (including clothing), doll heads, toy marbles, toy games, toy containers, toy favors, toy souvenirs, of whatever materials composed, air rifles, toy balloons, toy books without reading matter (not counting as reading matter any printing on removable pages), other than letters, numerals, or descriptive words, bound or unbound,

Such "[a] change in the language of a statute has always been construed * * to import a change in meaning unless the contrary is made plainly to appear in other ways." United States v. American Brown Boveri Electric Corporation, 17 CCPA 329, 333, T.D. 43776 (1929). As this court pointed out: "It seems clear that Congress, by these new provisions [in paragraph 1513] relating to dolls and by defining the term 'toy' as used in the paragraph, indicated an intent that the provision for dolls should be treated as an independent provision separate and distinct from the provision for toys and not to be limited to such dolls as were toys but should include all dolls." Louis Wolf & Co., Inc. v. United States, 15 Cust.Ct. 156, 160, C.D. 963 (1945). This construction of 1513—as applying to all sorts of dolls, whether toys or not—has been consistently adhered to by this court and its appellate court. The American Import Company v. United States, 22 Cust.Ct. 51, 53, C.D. 1158 (1949); M. Pressner & Co. v. United States, 24 Cust.Ct. 77, 80, C.D. 1211 (1950); Barum Co., Inc. v. United States, 30 Cust.Ct. 414, 417, Abstract 57251 (1953); United States v. Cody Manufacturing Co., Inc., et al. 44 CCPA 67, 73–74, C.A.D. 639 (1957); M. Adler's Son, Inc. v. United States, 38 Cust. Ct. 466, 467–468, Abstract 60634 (1957); Brechner Bros. v. United States, 58 Cust. Ct. 272, C.D. 2959 (1967). See also S. E. Laszlo v. United States, 27 CCPA 152, 156. C.A.D. 76 (1939); M. Pressner & Co. v. United States, 7 Cust.Ct. 106, 107, C.D. 546 (1941).

■■ Considering this long-standing and uniform judicial interpretation of paragraph 1513, *stare decisis* would require a showing of clear error in the prior decisions to justify their reversal at this late date. E. g., R. J. Saunders & Co., Inc. v. United States, 54 CCPA ——, C.A.D. 898 (1966). Plaintiffs insist. that such error is shown by the legislative history of 1513 which, they say, demonstrates that Congress intended, in enacting the provision, to continue the practice existing under paragraph 1414 of the 1922 Tariff Act and to include therein only toy dolls. We have examined the legislative history and cannot agree. The fact is that the legislative history provides no meaningful indication as to the reasons for the differences in language as between paragraph 1513 and its predecessor paragraph 1414. In such circumstances, the congressional intent must, of course, be ascertained from the language of the new provision vis-a-vis the old; and even a casual examination of the two provisions (which are quoted above, supra, notes 2 and 3) makes it manifest that under paragraph 1513, as contrasted with 1414, "dolls and toys [under 1513] become separate tariff entities for classification purposes." American Import Company, supra, 22 Cust.Ct. at 53.

■■ We conclude, in short, that the term "dolls" under paragraph 1513 is not limited to an article used chiefly as a child's plaything; it includes "any similar figure for * * * ornament." Louis Wolf & Co., Inc. v. United States, supra, 15 Cust.Ct. at 160. See also e. g., Webster's New International Dictionary (2d ed., 1934); The American Import Company v. United States, supra, 22 Cust.Ct. at 53; United States v. Cody Manufacturing Co., Inc., et al., supra, 44 CCPA at 74. With respect to the articles in the present case, the record establishes (i) that they are similar to dolls used as children's playthings; (ii) that they are used for ornamental purposes; and (iii) that they are known as "dolls" in the wholesale and retail trade.

and parts thereof, garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

The conclusion in view of these considerations is thus inescapable that the articles are "dolls" within the common meaning of paragraph 1513.[4]

The protest is overruled and judgment is entered accordingly.

WATSON, J., concurs.

---

4. S. S. Kresge Co. v. United States, 25 Cust.Ct. 89, C.D. 1269 (1950), on which plaintiff places heavy emphasis, is clearly distinguishable. In that case, it was held that certain artistically molded, delicate and fragile, and beautifully decorated figures which were frequently sold in pairs and used in conjunction with other figures were not "dolls" within the common meaning of the term, first, because they were not similar to a child's puppet but rather were properly embraced within the definition of the words "figurines," "statuettes" and "images," and second, because there was no showing that the articles were invoiced, bought and sold as "dolls" or were so known to the trade. Similarly distinguishable is M. Pressner & Co. v. United States, supra, 24 Cust.Ct. 77, in which the court held that certain celluloid figures of miniature men carrying a football were not dolls on the ground (1) that there was nothing in the record to establish a commercial designation of such figures as "dolls"; and (2) the figures were worn as badges or insignias and not as ornaments and thus were not "similar figures for play or ornament." See also M. Pressner & Co. v. United States, supra, 7 Cust.Ct. 106.