DAN-DEE IMPORTS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81–5–00582

Before RESTANI, *Judge*

(Dated April 30, 1984)

*DiFalco, Amhurst, Smithson, Tannenbaum & Duval (Herbert T. Posner, Esq.),* for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office and *Deborah E. Rand, Esqs.,* for defendant.

## *Opinion*

Plaintiff, which has moved for summary judgment, challenges the United States Customs Service's (Customs) classification of twelve entries of merchandise packaged as "Tell A Story Dolls," [1] and imported from Taiwan during 1978 and 1979.

Customs classified the merchandise as dolls under item 737.22, Tariff Schedules of the United States ("TSUS"), and assessed duty at a rate of 17.5% *ad valorem.* [2] The plaintiff, Dan-Dee Imports, Inc. ("Dan-Dee"), contends that the merchandise is classifiable as toys under item A737.95, TSUS, [3] and that, as toys imported from Taiwan during the relevant period, the merchandise is entitled to duty-free treatment under the General System of Preferences ("GSP"). [4]

---

[1] The merchandise was invoiced variously as "Story Dolls" and "Story Book Dolls."

[2] Item 737.22, TSUS, provides:
Dolls, and parts of dolls including doll clothing:
*   *   *   *   *   *
Other................................................................................................ 17.5% ad valorem

[3] Item A737.95, TSUS, provides:
Toys, and parts of toys, not specially provided for:
*   *   *   *   *   *
Other................................................................................................ Free

[4] Apparently not all entries would be entitled to duty-free treatment, even if the affected merchandise is classifiable as toys, because during the relevant period the TSUS item was amended to deny duty-free status to toys imported from Taiwan.

The thrust of plaintiff's argument in support of its motion for summary judgment is that the merchandise in issue consists of "more than" dolls, and therefore, Custom's classification of the figures as dolls was incorrect. Plaintiff further claims that the merchandise in issue is properly classifiable as toys because it is chiefly used for the amusement of children or adults.

The defendant opposes summary judgment. It contends that genuine issues of material fact which require trial exist relating to: (1) whether the chief use of the merchandise is for amusement, and (2) whether the "story" feature renders the merchandise "more than" dolls.

The merchandise in issue consists of colorful stuffed figures which portray various storybook characters. The unique feature possessed by each figure is a series of cloth "flaps" attached to the figure just below the neck, which cover the entire body and upon which are printed in progressive order the stories relating to the storybook character represented by the stuffed figure. As each flap is turned up, the face of the main figure is covered by the bottom portion of the previous flap, which contains a new "face" which corresponds with the story. At the same time, the new flap consequently exposed across the body of the figure contains the next few lines of the story printed on the background of another "skirt" or costume. For example, one figure, item number 726, depicts Cinderella and possesses four flaps containing the story about that character. Another figure, item number 718, also possessing four flaps, represents Little Red Riding Hood, and contains the story relating to that character printed upon the flaps affixed to it. Although most of the "Tell A Story Dolls" in question contain flaps which have human faces exclusively,[5] a few "Tell A Story Dolls" have flaps which feature the face of an animal which relates to the content of the text printed upon the opposite flap.[6]

Plaintiff has submitted the deposition testimony of Sally J. Patton ("Patton"), the president of a corporation which engages in education consulting work. Patton has higher degrees in the field of education, has college teaching experience in a variety of areas in the field of education, and has authored nine books in the field of gifted education. Patton states that she has observed children between the ages of 3 and 7 using the "Tell A Story Dolls" as books on hundreds of occasions. Patton states that her observations have

[5] All of the "main characters" of the "Tell A Story Dolls" have faces attached to the stuffed figure body which are human in nature.

[6] For example, the Little Red Riding Hood model of the "Tell A Story Doll" has three flaps representing human characters in the story and the remaining flap has the face of a wolf—which corresponds with the last segment of the story.

led her to conclude that children do not use the "Tell A Story Dolls" as they would use a conventional "doll." She further states her opinion to be that the merchandise is unbound books and not dolls.

Plaintiff has additionally submitted the affidavit of Ellen E. Rosenberg ("Rosenberg"), the mother of a two and one-half year old child who owns a "Tell A Story Doll." Rosenberg states that, although her child was unable to read when she first received the "Tell A Story Doll," that she has always treated it more like a book than a doll. Specifically, Rosenberg states that while her child would hug her dolls and stuffed animals, she would bring her "Tell A Story Doll" to an adult, sit on that person's lap, and wait for the story material on the flaps to be read. Additionally, Rosenberg states that at age two and one-half, her child lifts the flaps, points to the different faces which are turned up, and seems to recognize the characters pictured on the underside of the flaps which correspond to the story, as she utters phrases identifying them.

On the other hand, defendant has submitted a "Declaration in Lieu of Affidavit" by Walter S. Reid ("Reid") who is a sales manager in a large retail toy store. Reid states in his declaration that in his opinion the "Tell A Story Doll" has all of the characteristics of a doll and therefore is a doll. More particularly, Reid states that the "Tell A Story Doll" is a rag doll in the form of a person made of cloth material. Reid further states that the story flaps on the figure serve only as an addition to or feature of the figure, and do not alter the basic characteristics of the figure or make the figure anything other than a doll. Reid adds that the merchandise would be sold as a doll.

Plaintiff has moved for summary judgment under Rule 56 of this court, which is patterned after Rule 56 of the Federal Rules of Civil Procedure. Summary judgment "* * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Court of International Trade, R. 56(d).[7]

The court's duty upon deciding a motion for summary judgment is to determine whether there are factual issues to be tried. *Schoenfeld & Sons, Inc.* v. *United States,* 3 CIT 123, 125 (1982) *citing Heyman* v. *Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). "When deciding summary judgment motions the court should resolve all ambiguities and draw off all reasonable inferences in favor of the party against whom summary judgment is sought." *Yamaha International Corp.* v. *United States,* 3 CIT 108, 109 (1982) *citing United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962); *S. S. Kresge Co.* v. *United States,* 77 Cust. Ct. 154, C.R.D. 76–

---

[7] This mandate of Rule 56(d) is identical to that found in Rule 56(c) of the Federal Rules of Civil Procedure.

6 (1976). Under this standard summary judgment cannot be granted for plaintiff in this case.

Plaintiff has the burden of proving that Customs' classification of the present merchandise as dolls was incorrect. *See* 28 U.S.C. § 2639(a)(1) (1983). Plaintiff is no longer, however, subject to the "dual burden" which was imposed by the predecessor law. If plaintiff can show that the instant merchandise is not dolls, as classified, but is unable to prove a different classification, it is nevertheless permissible for this court to remand the case to Customs under 28 U.S.C. 2643(b) (1982) for a new administrative determination. *See House of Adler, Inc.* v. *United States,* 2 CIT 274, 277–78 (1981) *citing* H.Rep. No. 96–1235, 96th Cong. 2nd Sess. 60 (1980) (legislative history makes clear that the remand power under section 2643(b) was intended "to allow the court an alternative to dismissing the case of a plaintiff who had demonstrated that the administrative decision was incorrect but was unable to establish the correct result.")

Essentially, the question presented is whether the merchandise is a doll within the *eo nomine* provision for "dolls," as classified by Customs, or whether it is something "more than" a doll, as plaintiff claim.[8]

In *Robert Bosch Corp.* v. *United States,* 63 Cust. Ct. 96, 103–104, C.D. 3881 (1969), this court described the "more than" principle of customs law as follows:

> The principle is well settled that where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute. *Cragstan Corporation* v. *United States,* 51 CCPA 27, C.A.D. 832 (1963); *United States* v. *The A. W. Fenton Company, Inc.,* 49 CCPA 45, C.A.D. 794 (1962); *Gerrard Sales Corp.* v. *United States,* 35 CCPA 39, C.A.D. 369 (1947); and *Hirsch & Co., et al.* v. *United States,* 4 Ct. Cust. Appls. 82, T.D. 33365 (1913).

This description has been relied upon by both this court and the appellate court. *See, e.g., Dollar Trading Corp.* v. *United States,* 349 F.Supp. 1395, 1399, 67 Cust. Ct. 308, 314, C.D. 4290 (1971) *aff'd* 468 F.2d 631, 60 CCPA 10 (1972); *see also Sanyo Electric, Inc.* v. *United States, supra,* 496 F.Supp. at 1317 [(1980)]; *United States* v. *Acec Electric Corp.,* 474 F.2d 1009, 60 CCPA 113 (1973); *Fedtro, Inc.* v. *United States,* 449 F.2d 1395, 59 CCPA 16 (1971). However, where the difference is in the nature of improvement or amplification and the essential character of the article is preserved or only incidentally altered, the applicable rule is that an unlimited *eo nomine* statutory designation includes all forms of the article in the absence of a contrary legislative intent or commercial designation.

---

[8] An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known to commerce. Sturm, *Customs Law & Administration* § 53.2 (1983).

*Robert Bosch* v. *United States, supra* 63 Cust. Ct. at 104, *citing Nootka Packing Co.* v. *United States,* 22 CCPA 464, T.D. 47464 (1935). It is paramount to keep in mind that our appellate court, in writing on the "more than" doctrine, has stated that "each case must in the final analysis be determined on its own facts." *United Carr Fastener Corp.* v. *United States,* 54 CCPA 89 (1967), and *see* cases cited therein. *See also Sanyo Electric, Inc.* v. *United States, supra.*

In the seminal case of *Russ Berrie & Co.* v. *United States,* 76 Cust. Ct. 218, C.D. 4659, 417 F.Supp. 1035, *appeal dismissed,* 63 CCPA 125 (1976), the court noted that it is well established in customs jurisprudence that the tariff provision for dolls is not a use provision, but an *eo nomine* provision. *Id.* at 223 *citing United States* v. *Cody Manufacturing Co., Inc.,* 44 CCPA 67, 73–4 (1957); *Louis Wolf & Co.* v. *United States,* 15 Cust. Ct. 156, 161, C.D. 963 (1945); *American Import Co.* v. *United States,* 22 Cust. Ct. 51, 53, C.D. 1158 (1949); *Barum Co., Inc.* v. *United States,* 30 Cust. Ct. 414, 417, Abs. 57251 (1953). Nevertheless, in determining whether an article is embraced within an *eo nomine* designation, its use may be considered in order to establish its identity. Sturm, *Customs Law & Administration, supra* at § 53.2 *citing United States* v. *Quon Quon Company,* 46 CCPA 70 (1959). In this case there appears to be a genuine factual dispute concerning use.[9] Furthermore, the *Russ Berrie* court stated that:

> Equally well established is the concept that a doll for tariff purposes *is not confined to playthings for children but includes a wide range of other articles* including but not limited to dolls for ornamentation such as boudoir dolls, souvenir or prize dolls, dolls for display or advertising purposes, and dolls sold as gag items, bar gadgets, adult novelties, etc. *Louis Wolf & Co., Inc.* v. *United States, supra,* 15 Cust. Ct. at 157, 158; *Gold-Silver & Co.* v. *United States,* 35 Cust. Ct. 246, 247, Abs. 59301 (1955). Thus the following wide range of articles have been held to be dolls for customs purposes: "World Fair Dolls" made of celluloid and manufactured to "simulate a military uniform with the World's Fair insignia of the 'Perisphere' and 'Trylon' on the hat," *Louis Wolf & Co., Inc.* v. *United States,* 15 Cust. Ct. 156, C.D. 963 (1945); Small woven rush figures made in Mexico, consisting of a horse and rider and a figure of a woman made of straw, *American Import Co.* v. *United States,* 22 Cust. Ct. 51, C.D. 1158 (1949); A hollow celluloid figure characterized as a gag item for adults which squirts water in a manner simulating the "Manneken Pis" statue in Brussels, Belgium, *Gold-Silver & Co.* v. *United States, supra,* 35 Cust. Ct. 246; A miniature plastic figure with a metal shaft affixed thereto which dedicated the article to exclusive use as a dancing doll with a music box, *United States* v. *Cody Manufacturing Co., Inc., et*

---

[9] It is also for this reason that plaintiff's requested classification of the merchandise as "toys" cannot be sustained at this time.

*al.,* 44 CCPA 67, C.A.D. 639 (1957); A celluloid baby with movable hands on a chenille stem either with or without a milk bottle and diaper, mostly used by florists in making up table decorations, *M. Adler's Son, Inc., et al.* v. *United States,* 38 Cust. Ct. 466, Abs. 60634 (1957); A mechanical dressed crawling baby which moved along a flat surface in a crawling posture when wound by a key, *Brechner Bros.* v. *United States,* 58 Cust. Ct. 272, C.D. 2959 (1967); *Lewis Galoob Co., et al.* v. *United States,* 67 Cust. Ct. 421, C.D. 4308 (1971); A papier-mâché Hawaiian hula girl, 5″ in height, mounted by a spring on a magnetic holding base used on the front dash or rear seat deck of a car as a decorative item and swaying with the motion of the auto in a hula dance fashion, *American Customs Brokerage Co., et al.* v. *United States, supra,* 60 Cust. Ct. 23.

*Id.* at 223–24 (emphasis provided).

In addition, recent lexicographical authorities agree that the word "doll" encompasses a broad spectrum of articles which are commonly known as dolls. *Id.* at 225. Although perhaps because the variety of merchandise within the common meaning of "doll" is so vast, the courts have not been able to render a comprehensive definition of, nor all-embracing finding as to what is a doll, there nevertheless appears to be a certain amount of agreement among the lexicographical authorities. *Id.* at 224–25. This court in *Louis Wolf & Co.* v. *United States,* 15 Cust. Ct. at 160 *supra* stated:

> * * * [W]e are of opinion that the common meaning of that term [doll] is sufficiently comprehensive to include all dolls, whether or not they are toys.
>
> This broader view is further borne out by a comprehensive article on the subject of dolls appearing in the Encyclopaedia Britannica, 14th Edition, wherein the history, development and use of various types of dolls are set forth in detail, indicating besides their use as playthings for children, wide use in religious rites and other ceremonies in many parts of the world from earliest times to the present day.

Defendant points out that the packaging of each article contains the word "doll." This factor is a significant one. *See Janex Corp.* v. *United States,* 80 Cust. Ct. 146, 149, C.D. 4748 (1978) (finding significant the fact that nowhere on the package was the merchandise referred to as a "doll," and consequently finding the article to be more than a doll.) *See also ASEA, Inc.* v. *United States,* 7 CIT 128 Slip Op. 84-28 at 7–8 (3/29/84). The Reid declaration strengthens this point, insofar as a sales manager of a large retail store specializing in toys and dolls states that the merchandise would be sold as a doll. The marketing of merchandise, while not determinative of classification, is to be considered as a factor based upon its obvious probative value. *See Childcraft Education Corp.* v. *United States,* [(4/15/83)] *citing Montgomery Ward & Co.* v. *United States,* 672 Cust. Ct. 718, C.D. 3853 (1969); *Nadel & Sons Toy Corp.* v. *United States,* 4 CIT 20, 23 (1982); *Russ Berrie & Co.* v. *United States, supra*

76 Cust. Ct. at 226; *United States* v. *Ignaz Strauss & Co., Inc.,* 37 CCPA 32 (1949); *Rene D. Lyon Co.* v. *United States,* 80 Cust. Ct. 39, C.D. 4735 (1978).

Plaintiff also argues that because a portion of the "flaps" on a fraction of the imported articles involved contain faces of animals related to the tales printed on the colorful skirts and other clothing covering the upper side of the flaps, that this merchandise cannot be classified as dolls, because dolls are commonly held to be "human" in nature. Although it is true that dolls are widely held to have human features, we note that the main character portrayed which occupies the top portion of each stuffed doll and which is attached to the body is in every case human in nature. Moreover, in *American Import Co.* v. *United States,* 22 Cust. Ct. 51, C.D. 1158 (1949) small woven rush figures made in Mexico, consisting of a horse and rider and a figure of a woman made of straw were found to come within the concept of "dolls" for tariff purposes. The animal element to these figures (the horse which accompanied the rider) did not add to or detract from their classification as dolls.

Considering the facts in dispute, the cases upon which plaintiff relies do not mandate summary judgment for plaintiff. In the present case it remains to be determined whether the human shape of the stuffed figure has a purpose or function apart from the "flaps" and whether or not the "flaps" are incidental to the basic figure. In light of the above discussed authorities we conclude that Customs' classification was not incorrect as a matter of law. Therefore, plaintiff's motion for summary judgment is denied. The parties shall submit a status report within 30 days indicating discovery plans, if any.