(C. D. 1529)

BALTIMORE & OHIO RAILWAY CO. a/c UNITED CHINA & GLASS CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 3, 1953)

*Philip Stein (Philip Stein* and *Marjorie M. Shostak* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*John J. Antus* and
*Chauncey E. Wilowski,* special attorneys), for the defendant.

Before EKWALL, JOHNSON, and OLIVER, Judges; EKWALL, J., dissenting

JOHNSON, Judge:   The merchandise at issue in this case was classified as decorated china ornaments, not tableware, and assessed with duty at the rate of 70 per centum ad valorem under paragraph 212 of the Tariff Act of 1930.   The plaintiff claims that the merchandise is properly dutiable at 35 per centum ad valorem under paragraph 1513, as amended by the Mexican Trade Agreement, T. D. 50797.

At the trial, it was contended that the merchandise is properly dutiable as dolls, or as toys, under said paragraph 1513.   The vice president of plaintiff testified that the merchandise was purchased in Japan and that he helped the artist design the articles.   The purpose for which the articles were designed, according to the witness, was, "As a small doll for children to play with or to be used in connection with doll houses."   The witness had not observed such articles in use, but he testified he purchased them for his toy department.   In his opinion, the principal difference between a doll and a figure, or a figurine, used as gifts and ornaments, "lies in the subject matter and the quality," and that figurines used as novelties sell at retail for about 50 cents, whereas the items in question were made to sell for about 10 cents.

The witness further testified that there were six assorted shapes of articles, all 2¼ inches tall and all on the same size base, the only difference being in the position of the hands or what the figure is holding and that the six figures are painted in six different assorted colors.

A sample of one of the figures in the shipment was admitted in evidence as exhibit 1.   It consists of a group of small chinaware figures on an oval base, which is colored to simulate grass.   The main figure represents a little girl wearing a hat, little dress, and socks and shoes.   It is holding a small, naked doll.   A little dog sits beside the figure of the little girl.

The plaintiff's assistant toy buyer testified that the articles in question are sold in connection with doll houses.   The witness further testified that he gave some of these articles to his in-law's children who were 4, 5, 6, and up in years; that the children played with them by putting them on their lawn, or putting them in the rooms, and on

the floor. The witness had not otherwise seen how the articles were used by the ultimate consumer. In selling the articles, however, the witness testified that the customers prefer to purchase in groups of six, embracing the entire assortment. However, as plaintiff was a wholesaler of the merchandise in question and sold to retail establishments, not to consumers, any testimony in the record relative to the number of figures a mother buys is entirely irrelevant, being beyond the scope of the knowledge of witness.

The Government called as witnesses the examiner of chinaware and the appraiser. The examiner had observed similar articles in homes on various whatnot shelves, tables, and at various places in the home and that the articles were used as ornaments. He could not recall children using identical articles. The appraiser testified that he also had seen such articles in the home; that he had similar figures in his own home, and he had seen them in the homes of friends; that in his home the articles are kept in the children's rooms "on top of the doors and window sills," and also that they use them in his home as a small figure on the Christmas garden under the Christmas tree just for ornamentation or decoration. When under the Christmas tree, the children are not permitted to touch them, and when otherwise used, the witness testified:

X Q. Mr. Provost, who puts these articles on that shelf in your home?—A. The children do that themselves.

X Q. And, they take them off the shelves?—A. Yes, they take them off.

X Q. You don't call that playing with them?—A. Not in my definition of the word play.

Counsel for the importer conceded that the articles in question were 2¼ inches tall and in six assorted shapes, which fact appears upon the invoice and is evidenced by the sample in evidence. The Government counsel also conceded "that they are dolls in nature."

Although it is clear that counsel for the plaintiff conceded no more than that the sample represented one of six varieties of figures imported, it is not quite clear what was intended by the Government's concession, that is to say, it is not clear whether the Government intended to concede that the articles were, in fact, dolls but not used like dolls by children, or whether the figures looked like dolls but were not dolls. However, in view of the testimony adduced, it is not conceivable that it was the Government's intention to admit that the importer was correct in claiming the articles to be dolls. An article is either a doll, as provided for in paragraph 1513, or it is not.

Counsel for the plaintiff contends that it is established by the evidence that the articles are not ornaments but are, in fact, toys or dolls, and urges that an examination of the sample supports plaintiff's contention, because of the subject matter and cheap, crude quality, that the articles are not ornaments in the statutory sense "nor could

they ever be chiefly used, nor did they ever belong, to a class of articles which was chiefly used as ornaments on what-not shelves or mantels by adults."

It is further contended that if an article is within the purview of the toy paragraph, an *eo nomine* designation elsewhere would not remove it from classification as a toy, and, therefore, as the articles are within both the category of toys and dolls, specifically enumerated under paragraph 1513, they were improperly classified under paragraph 212.

The paragraph of the Tariff Act of 1930 in question, so far as pertinent herein, provides as follows:

PAR. 212. China, porcelain, and other vitrified wares, * * * and all bisque and parian wares, including * * * ornaments, charms, vases, statues, statuettes, * * * and all other articles composed wholly or in chief value of such ware * * *; painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem. * * *

Paragraph 1513 of the Tariff Act of 1930, as amended by T. D. 50797, provides as follows:

| Tariff Act of 1930 paragraph | Description of article | Rate of duty |
|---|---|---|
| 1513 | Dolls, parts of dolls (including clothing), and doll heads, of whatever materials composed (except those composed wholly or in chief value of any product provided for in paragraph 31 of the Tariff Act of 1930 and except those composed in any part, however small, of any of the laces, fabrics, embroideries, or other materials or articles provided for in paragraph 1529 (a) of that Act)___ | 35% ad valorem |
| 1513 | Toys, and parts of toys, not specially provided for, wholly or in chief value of china, porcelain, parian, bisque, earthenware, or stoneware_____ | 35% ad valorem |

Paragraph 1513 of the Tariff Act of 1930 defines the term "toy" as follows:

* * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

The first question arising herein is whether or not the articles in question come within the common meaning of "dolls." In Funk & Wagnalls New Standard Dictionary, 1931 edition, page 744, a doll is described as follows:

doll * * * 1. A toy puppet representing a person, and used as a plaything by children, especially by girls.

In Webster's New International Dictionary, 2d edition, 1953, page 767, a doll is described as:

**doll** * * * **2.** A child's puppet; esp., a toy baby for a child; any similar figure for play or ornament. * * *

In the case of *Strauss-Eckardt Co. (Inc.)* v. *United States*, 56 Treas. Dec. 428, T. D. 43664, the court, in holding certain Indian babies to be dolls, stated:

* * * We can all testify to the impression made on the mind when the word "doll" is uttered. We think of something that will amuse children, and especially little girls. This idea can not be eliminated from our thoughts when we think of dolls. The mere name indicates quite clearly their use and designation. The evidence in the case at bar does not satisfy us that the dolls in question were not designed for the amusement of children. * * *

The sample of the articles here imported is a potent witness. An inspection thereof does not create such an impression as the court indicated in the *Strauss-Eckardt* case, *supra*. However, under one of the foregoing definitions, it might still come within the common meaning of a "similar figure for play or ornament" were it not for the fact that the articles represent a group of figures, not all within the meaning of a puppet, which is defined as "* * * A small figure, commonly representing a human being * * *" (Funk & Wagnalls New Standard Dictionary, *supra*, page 2011).

In the case of *Barum Co., Inc.* v. *United States*, Abstract 57251, involving articles described as hollow, soft, rubber figures, having a whistle firmly attached in the back to produce sound when squeezed, and in chief value of rubber, were claimed classifiable under the provision for dolls. One of the articles had the head of a monkey, while the remainder of the body was dressed in clothing, and the figure was represented as playing a musical instrument. The other article had the head of an elephant. The body thereof was also dressed in clothing, even to the shoes. In holding that the figures were not dolls, the court stated—

* * * To say that the articles under consideration are "in human form," as contended by plaintiff, requires an unreasonable stretch of the imagination. * * *

In the case of *The American Import Company* v. *United States*, 22 Cust. Ct. 51, C. D. 1158, the articles consisted of "woven rush women." The articles were classified as straw dolls. There, it was claimed that they were not dolls but rather manufactures of straw, the same as another article in the same shipment consisting of a horse and rider. The evidence tended to establish that the articles were not toys but were used as decorative novelties and not for children to play with. The court pointed out that the provision for dolls "was not confined to articles used as playthings for children but includes those for ornamental and other purposes," citing *Louis Wolf & Co., Inc.* v.

*United States*, 15 Cust. Ct. 156, C. D. 963, where hollow, celluloid figures were held to be dolls, even though they were not designed for the amusement of children.

Inasmuch as the figures in question consist of something more than puppets, they are not within the classification of dolls as that term is commonly understood.

The next question arising is whether or not the articles come within the definition of toys as that term is defined in paragraph 1513, *supra*. In other words, do they consist of articles "chiefly used for the amusement of children"? In assessing duty upon the articles as chinaware, the collector has ruled that they are not articles chiefly used for the amusement of children. There is nothing in the design of the article which would dedicate it to such use, nor would the observation of one of the witnesses who had given some of the articles to children be sufficient to establish the chief use of such articles. Evidence to the effect that such articles were used as ornaments in children's rooms is not sufficient to conclude that the articles are toys.

In the case of *United States* v. *F. W. Woolworth Co.*, 28 C. C. P. A. (Customs) 196, C. A. D. 145, metal figures of men, women, and boys, shown handling different tools and objects, were assessed for duty as toys. Some of the evidence was to the effect that the figures were sometimes used by children for decorative purposes in their nurseries and in homes where there were children. Twenty-eight witnesses testified for the plaintiff as to the use and character of the articles as ornaments, while 12 witnesses testified for the Government that they had seen children, including those of some of the mothers testifying, play with articles like the miniature figures in question and that the children seemed to derive amusement from such play, but the court found that the testimony of the importer's witnesses, without material exception, established that such articles were chiefly used throughout the United States for purposes other than the amusement of children. The court concluded from the testimony and an inspection of the samples that the miniature objects were not of the class or kind designed to be used, or were used "to any great extent for the amusement of children *in the sense that a toy would amuse them.*" [Italics not quoted.]

In the case of *S. S. Kresge Co.* v. *United States*, 25 Cust. Ct. 89, C. D. 1269, certain papier-mâché figures, consisting of 12 human figures with clothing painted thereon, each of the figures standing on a green-simulated grass base, measuring approximately 1½ inches in diameter, and the figures measuring 4¾ to 5 inches overall in height, the figures representing Italian farmers and peasants, were held to be neither dolls nor toys. In so holding, the court stated in part that:

\* \* \* It can scarcely be maintained that the imported figures here in question are similar to a child's puppet. Not all miniature figures of human

beings which are used for ornamental purposes are, by reason of that fact alone, to be considered "dolls." While these articles were used for ornamental purposes, yet, they must, in the first instance, be similar to a child's puppet if they are to be considered within the secondary meaning of the term "dolls." An examination of the samples before us disproves the defendant's claim. * * * It is to be observed that *the figures in question are mounted,* and the record discloses that *they are usually, or at least frequently, sold in pairs, and are used in conjunction with other decorative articles,* including use with identical figures of a larger size. They are not, therefore, similar to a child's puppet and therefore cannot be considered "dolls" within the common meaning of the term. They are more properly embraced within the definitions of the words "figurines," "statuettes," and "images." *The term "dolls" in paragraph 1513 of the present tariff act was not intended to include statuettes and similar articles.*

\* \* \* \* \* \* \*

On the record in this case, we find and hold that the articles before us are not properly dutiable as "toys" under paragraph 1513, Tariff Act of 1930, as assessed, nor as "dolls" as claimed by the defendant. We find these figures to be properly dutiable at the rate of 25 per centum ad valorem under paragraph 1403, of the Tariff Act of 1930 as "manufactures of papier-mâché, not specially provided for," as claimed. [Italics not quoted.]

In view of the decisions cited and an inspection of the sample, we are of the opinion that the importer has failed to overcome the presumption of correctness of the collector's classification of the articles in question as chinaware ornaments. Judgment will therefore be entered in favor of the Government.

### DISSENTING OPINION

EKWALL, Judge: I find myself unable to agree in the holding of the majority that the merchandise involved consists of decorated china ornaments, not tableware, dutiable under paragraph 212 of the Tariff Act of 1930. I agree with the finding that the merchandise in suit cannot be designated as "dolls" under paragraph 1513 of the same act. In my view, however, the record substantiates the claim that the articles are toys under said paragraph 1513. Plaintiff's testimony included that of the designer of the articles in suit. He stated that they were designed "As a small doll for children to play with or to be used in connection with doll houses." It is true that this witness had not observed the articles in use, but he testified that he purchased them for his toy department.

The assistant toy buyer connected with the plaintiff company testified that the articles were sold in connection with doll houses.

This testimony, to my mind, carries much weight. Certainly, the person who helped design the articles must know of the chief use to which they are to be put in order that he may adapt the design to such use.

It is my opinion that the testimony produced on behalf of the plaintiff has not been overcome by defendant's evidence and that the

former is sufficient to overcome the presumption of correctness attaching to the collector's classification. That the articles are used in connection with doll houses, to my mind, places them in the category of toys. The appearance of the official sample, exhibit 1, is also indicative of its use as a toy rather than as an ornament.