(C.D. 2959)

BRECHNER BROS. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 13, 1967)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* and *David Serko* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Harold L. Grossman* and *Avram Weisberger*, trial attorneys), for the defendant.

OLIVER, Judge: This case concerns an importation of merchandise described on the invoice as a "Mech. Dressed Crawling Baby" which was assessed for duty as a doll at the rate of 35 per centum ad valorem under paragraph 1513 of the 1930 Tariff Act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739 and T.D. 52857. Plaintiff claims that the merchandise is properly dutiable at the rate of only 30 per centum ad valorem under the same paragraph, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108 and T.D. 54398, as a figure or image of an animate object, wholly or in chief value of metal, having a movable member or part and a spring mechanism. An alternative claim at the rate of 21 per centum ad valorem under paragraph 1513 was abandoned at trial.

The pertinent sections of the competing tariff provisions read as follows:

Paragraph 1513, as modified by T.D. 52739 and T.D. 52857:

Dolls not composed in any part of any article or material provided for in paragraph 1529(a), Tariff Act of 1930, not wholly or in chief value of any product provided for in paragraph 31 of that Act, and not wholly or in chief value of china, porcelain, parian, bisque, earthenware, or stoneware_____ 35% ad val.

Paragraph 1513, as modified by T.D. 54108 and T.D. 54398:

Toys, not specially provided for:

* * * and figures or images of animate objects, wholly or in chief value of metal, if having any movable member or part but not having a spring mechanism, and valued at 30 cents or more per pound, or if not having any movable member or part and valued at 21 cents or more per pound__ 22% ad val.

\*          \*          \*          \*          \*          \*          \*

Figures or images of animate objects wholly or in chief value of metal and not specified above in this item_____ 30% ad val.

The protest has been submitted for decision pursuant to a stipulation entered into between the parties. It was agreed therein that plaintiff's exhibit 1 (received into evidence at the trial) is a representative sample of the imported merchandise; that said exhibit is in chief value of metal and is chiefly used for the amusement of children; and that it has a movable member or part and operates by means of a spring mechanism.

Exhibit 1 measures approximately 4 inches long and resembles a baby dressed in a red robe and wearing a yellow bonnet. A bib is secured about its neck. It is posed in a crawling position, and when

wound (by means of a key extending from its underside), it moves along a flat surface in the manner of a crawling infant.

Plaintiff's claim in this case is based upon alternative contentions, namely, that exhibit 1 is not a doll or, if a doll, it is more specifically provided for in paragraph 1513, as modified, as a figure or image of an animate object. Defendant maintains that the imported item is a doll and, as such, properly classifiable within the *eo nomine* provision for dolls in paragraph 1513, as modified, whether or not it also fits the definition and uses of a toy.

In arguing for its primary contention, plaintiff cites several cases for the proposition that not all objects that resemble human figures are properly within the doll provision. Special emphasis is placed upon the following quoted portion of our decision in *Baltimore & Ohio Railway Co. a/c United China & Glass Co.* v. *United States*, 30 Cust. Ct. 255, C.D. 1529:

* * * In Funk & Wagnalls New Standard Dictionary, 1931 edition, page 744, a doll is described as follows:

> doll * * * 1. A toy puppet representing a person, and used as a plaything by children, especially by girls.

In Webster's New International Dictionary, 2d edition, 1953, page 767, a doll is described as:

> doll * * * 2. A child's puppet; esp., a toy baby for a child; any similar figure for play or ornament. * * *

In the case of *Strauss-Eckardt Co. (Inc.)* v. *United States*, 56 Treas. Dec. 428, T.D. 43664, the court, in holding certain Indian babies to be dolls, stated:

> * * * We can all testify to the impression made on the mind when the word "doll" is uttered. We think of something that will amuse children, and especially little girls. This idea can not be eliminated from our thoughts when we think of dolls. The mere name indicates quite clearly their use and designation. The evidence in the case at bar does not satisfy us that the dolls in question were not designed for the amusement of children. * * *

The sample of the articles here imported is a potent witness. An inspection thereof does not create such an impression as the court indicated in the *Strauss-Eckardt* case, *supra.* * * *

The argument concludes that a doll, particularly one for little girls, must be something that "arouses all the feminine instincts of warmth, love and affection which only a little girl can lavish on a doll" and that exhibit 1, being but a piece of metal covered by cloth, having a metal key protruding from its belly, and moving in a "grotesque pattern," fails to evoke these sentiments.

We are unable to find any substance in this contention. The definitions quoted in the *Baltimore & Ohio Railway* case, *supra*, appear to be completely satisfied by the infant figure as represented by exhibit 1.

This is particularly true of Webster's New International Dictionary (2d edition, 1953) definition to wit: "A child's puppet; esp. a *toy baby* for a child; * * *" [emphasis added]. Furthermore, we find nothing in the quoted portion of the *Baltimore & Ohio* case concerning a requisite for arousing feminine instincts of love and affection. The court in the *Strauss-Eckardt* case, *supra*, used the phrase "something that will amuse children" and based upon the stipulation in this case we find that criterion fulfilled.

Moreover, the rosy-cheeked, blue-eyed baby figure, clothed in bright colors and set in a classic crawl position, the subject of the instant protest, suggests the essential characteristics of a child's doll. The crawling action of the baby, when wound, is very realistic and it is quite a misreading to label it "grotesque." Certainly the court can take judicial notice of the fact that technological advances have visited the doll making business to the extent that walking, talking, and crying dolls of all sizes and shapes permeate the modern market places. The extent and degree of imaginative and lifelike features incorporated in these products are sometimes almost incredible. However, it is simply a case of today's children playing with today's dolls, and while the product may change, it is in no way manifest that its use by young, would-be mothers has changed.

None of the cases relied upon by the plaintiff can be used to effectively challenge the collector's finding in this case: *M. Pressner & Co.* v. *United States*, 7 Cust. Ct. 106, C.D. 546, dealt with miniature figures of men carrying footballs and sold to adults attending football games; *S. S. Kresge Co.* v. *United States*, 25 Cust. Ct. 89, C.D. 1269, involved papier maché figures mounted on simulated grass bases and held to be more like figurines or statuettes than dolls. Additionally the claim for dolls in that case was unsupported by the presumption of the collector's finding; *Baltimore & Ohio Railway Co.*, *supra*, involved groups of small chinaware figures mounted on oval bases, consisting of a main figure of a little girl holding a doll and standing beside a sitting dog. The court held that they represented something more than a child's puppet.

With reference to the word "puppet," plaintiff has suggested in its brief that this limits the term doll to those articles that can be manipulated. No authority is cited for this contention, and the court has found no case that would support such a view. On the contrary, we observed in the *Baltimore & Ohio* case, *supra*, that the word "puppet" is defined as "* * * A small figure, commonly representing a human being * * *." As defendant points out, most dictionary definitions make the word "puppet" synonymous with the word "doll." We know of no sound reason for limiting the meaning of dolls in paragraph

1513 to articles manipulated by hand or strings as one of the meanings of the word "puppet" suggests.

Holding, as we do, that the imports are "dolls" within the common meaning of that term, we now turn to plaintiff's alternative contention that the instant articles are more specifically provided for as figures or images of animate objects in paragraph 1513, as modified, *supra*.

Exhibit 1 is certainly a figure of an animate object as it represents something having animal life. *H. Hudson Dobson et al.* v. *United States*, 28 Cust. Ct. 290, C.D. 1424. Plaintiff, therefore, contends that, based upon the stipulated fact that exhibit 1 is chiefly used for the amusement of children, it is more specifically described under the claimed modified provision of the toy section of paragraph 1513 than as a doll because the term "dolls" includes items used for nonamusement as well as amusement purposes, citing *S. E. Laszlo* v. *United States*, 27 CCPA 152, C.A.D. 76; *Louis Wolf & Co., Inc.* v. *United States*, 15 Cust. Ct. 156, C.D. 963; *The American Import Company* v. *United States*, 22 Cust. Ct. 51, C.D. 1158.

The trouble with this contention is that the very same judicial authority stands as precedent for holding articles dutiable under the *eo nomine* provision for dolls in paragraph 1513 even though they may qualify as toy items within the same paragraph. In the case of *Barum Co., Inc.* v. *United States*, 30 Cust. Ct. 414, Abstract 57251, relied on by defendant, we specifically rejected an argument by Government counsel that articles, described as both dolls and toys, are dutiable within the latter description by reason of the following language in paragraph 1559:

If two or more rates shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

Citing the same authority as plaintiff has in this case, we observed that the provision for dolls is to be treated as separate and distinct from that for toys and held, in effect, that the toy rates were not applicable to merchandise falling within the doll provision.

On the other hand, the logical result of plaintiff's argument would be to destroy much of the separateness in the two categories of merchandise as originally contemplated by Congress. As we noted in the *Louis Wolf* case, *supra*, most dolls are the type used as amusement items for children and by definition all dolls are figures of animate objects. Thus, where metal is present in chief value, the *eo nomine* provision for dolls would be severely invaded by the language of the present modified version of the toy provision. We should not subscribe to such a result; nor do we think the trade modification intends such a result. The provision for figures or images of animate objects is carved out and reposes under the provision for toys, not specially provided for, and it is well settled that trade agreements are viewed

as affecting articles already encompassed within the provisions of the statute being modified. *United States* v. *Canadian National Railways*, 29 CCPA 272, C.A.D. 202; *United States* v. *Curley-Bates Co.*, 46 CCPA 14, C.A.D. 688.

For the reasons discussed herein and based on the conclusions reached, we find and hold that the involved mechanical crawling babies were properly classified by the collector as dolls within the *eo nomine* provision of that term in paragraph 1513, as modified, *supra*, and the protest is, therefore, overruled. Judgment will issue accordingly.