(C.D. 4308)

Lewis Galoob Co.
Thornley & Pitt } v. United States

United States Customs Court, First Division

(Decided December 22, 1971)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*L. Patrick Gray, III*, Assistant Attorney General (*Andrew P. Vance* and *John A. Gussow*, *trial attorneys*), for the defendant.

Before Watson, Maletz, and Re, Judges

Maletz, Judge: This case involves the tariff status of an article invoiced as a mechanical crawling baby that was imported from Japan via the port of San Francisco. The import was classified by customs under item 737.20 of the tariff schedules which covers dolls and assessed duty at the rate of 35 percent. Plaintiffs protest this assessment and claim that the articles are more than dolls and thus properly dutiable at 24 percent under item 737.45 which provides for toy figures of animate objects (except dolls) that have a spring mechanism and are wholly or almost wholly of metal.

We proceed now to determine whether or not the article in controversy was properly classified as a doll. Considering first its characteristics, the article measures approximately three inches in length and resembles a baby dressed in a blue robe and a white bib. It is posed in a crawling position, and when wound (by means of a key extending from its underside), it moves along a flat surface in the manner of a crawling infant. What is more, it is the same in all material respects as an import—invoiced as a "Mech. Dressed Crawling Baby"— that was previously considered by this court in *Brechner Bros.* v.

*United States*, 58 Cust. Ct. 272, C.D. 2959 (1967).[1] The import involved in *Brechner* was classified by the collector of customs under the provision of paragraph 1513 of the Tariff Act of 1930, as modified, covering dolls, and was claimed to be properly classifiable under the provision of that paragraph covering figures of animate objects. The court held that the article was properly classified as a doll in which connection it relied on dictionary definitions of a doll as (i) "[a] toy puppet representing a person, and used as a plaything by children, especially by girls"; and (ii) "[a] child's puppet; esp., a toy baby for a child; any similar figure for play or ornament. * * *" Against the background of these definitions, the court in *Brechner* pointed out that (58 Cust. Ct. at 275) :

> * * * [T]he rosy-cheeked, blue-eyed baby figure, clothed in bright colors and set in a classic crawl position, the subject of the instant protest, suggests the essential characteristics of a child's doll. The crawling action of the baby, when wound, is very realistic and it is quite a misreading to label it "grotesque." Certainly the court can take judicial notice of the fact that technological advances have visited the doll making business to the extent that walking, talking, and crying dolls of all sizes and shapes permeate the modern market places. The extent and degree of imaginative and lifelike features incorporated in these products are sometimes almost incredible. However, it is simply a case of today's children playing with today's dolls, and while the product may change, it is in no way manifest that its use by young, would-be mothers has changed.

Plaintiffs take no issue with *Brechner* but argue that the emission of a "noise" from the present importation—the noise being simply an incident of the running of the spring mechanism after it has been wound—"constitutes a substantial difference [from *Brechner*] because * * * [the present importation] no longer possesses the essential characteristics of a child's doll * * *." In other words, plaintiffs consider the "noise-emitting" attribute of the present importation a basic distinguishing characteristic from the import in *Brechner* that was held to constitute a doll. But this attempted distinction utterly fails upon comparison of the pertinent exhibits. For even the most casual examination of the import involved in *Brechner* makes clear that a noise is produced upon the running of the spring mechanism after it has been wound which is indistinguishable from the noise emitted by the present import. Indeed, not only do the two operate in exactly

---

[1] The import in *Brechner*, as described by the court, "measures approximately 4 inches long and resembles a baby dressed in a red robe and wearing a yellow bonnet. A bib is secured about its neck. It is posed in a crawling position, and when wound (by means of a key extending from its underside), it moves along a flat surface in the manner of a crawling infant." 58 Cust. Ct. at 273–74.

the same way, one can scarcely tell them apart. Thus, here as in *Brechner*, there can be no doubt that "the subject of the instant protest suggests the essential characteristics of a child's doll."

In sum, we conclude that *Brechner* is dispositive of the present controversy. The protest is overruled, and judgment will issue accordingly.